**UNITED STATES of America,**
**Appellant,**

v.

**James Dean ANDERSON,**
**Defendant, Appellee.**

No. 90–1620.

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1990.

Decided Dec. 13, 1990.

Douglas Cannon, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., Concord, N.H., was on brief, for U.S.

John Burwell Garvey, with whom Sulloway Hollis & Soden, Concord, N.H., was on brief, for defendant, appellee.

Before BREYER, Chief Judge, SELYA, Circuit Judge, and PETTINE *, Senior District Judge.

SELYA, Circuit Judge.

The government seeks to persuade us that the district court erred in refusing to sentence defendant-appellee James Dean Anderson under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e) (1988). We are convinced and therefore vacate appellee's sentence.

## BACKGROUND

Anderson and a codefendant, Cox, were the subjects of a five count indictment preferred by a federal grand jury in New Hampshire. Anderson was charged with two "firearms possession" counts (i.e., being a convicted felon in possession of firearms which had travelled in interstate commerce, in violation of 18 U.S.C. § 922(g)) and a single "firearms transportation" count (i.e., transporting stolen firearms in interstate commerce, in violation of 18 U.S.C. § 922(i)). The government filed a notice that it would seek to have him sentenced under the ACCA's enhanced penalty provisions.[1]

About ten weeks later, Anderson and the government entered into a plea agreement (the Agreement) pursuant to Fed.R.Crim.P. 11(e)(1)(A) & (B). The Agreement provided, in fairly standard phraseology, that Anderson would plead guilty to the paired "firearms possession" counts and that, at the time of sentencing, the "firearms transportation" count would be dismissed. The government reaffirmed that it would urge the court to rule that the ACCA applied and, therefore, to impose a mandatory sentence of at least fifteen years on each firearms possession count. Anderson explicitly reserved the right to challenge the applicability of the ACCA both before the district court and on appeal.

In the Agreement, Anderson stipulated to three prior convictions: (1) a February 1981 North Carolina conviction for breaking and entering/larceny; (2) an April 1983 Massachusetts conviction for burglary; and (3) an October 1984 Massachusetts conviction for intent to rob while armed. At the time of sentencing, he maintained that, notwithstanding these prior convictions, he was not subject to the ACCA for two reasons. First, he claimed that the North Carolina conviction did not qualify as a "violent felony" within the meaning of 18 U.S.C. § 924(e)(1). Second, he asserted that, because of the irregular sequence of the convictions and the offenses underlying them, the statute did not apply. Persuaded by this second asseveration, the district

---

* Of the District of Rhode Island, sitting by designation.

1. The ACCA provides in pertinent part:
   In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).....
   18 U.S.C. § 924(e)(1).

court sentenced Anderson to a 21–month prison term on each count (concurrent) in accordance with the sentencing guidelines, eschewing the 15–year mandatory minimum ordained by the ACCA. The government, displeased, prosecuted the instant appeal.

## APPELLATE JURISDICTION

■ Before turning to the substantive issues, we must first address the defendant's contention that we lack appellate jurisdiction. It is firmly settled that the government has no right of appeal whatsoever in criminal cases except to the extent that a statute expressly confers such a right. *See United States v. Patterson*, 882 F.2d 595, 597 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 737, 107 L.Ed.2d 755 (1989); *United States v. Levasseur*, 846 F.2d 786, 787 (1st Cir.), *cert. denied*, 488 U.S. 894, 109 S.Ct. 232, 102 L.Ed.2d 222 (1988); *United States v. Kane*, 646 F.2d 4, 5 (1st Cir.1981). Anderson argues that there is no statutory hook on which the government's appeal can be hung or, alternatively, that the government waived any right of appeal as part of the Agreement. We consider these points *seriatim*.

■ 1. *Statutory Basis.* It is clear that "[t]he ACCA does not explicitly provide for an appeal by the government from a district court's refusal to impose an enhanced penalty." *Patterson*, 882 F.2d at 597. Thus, if the prosecution possesses a cognizable basis for an appeal of Anderson's sentence, that basis must lie within the confines of 18 U.S.C. § 3742(b)(1), which allows the government to appeal from a sentence imposed "in violation of law."

Defendant argues that section 3742(b)(1) is inapposite since, even if the ACCA linguistically applies, a district judge nevertheless enjoys discretion over whether or not to utilize the sentence-enhancement mechanism. We disagree. The plain language of the ACCA does not admit of any such discretion.[2] If the requisite preconditions are present, the district court must impose a sentence at or above the congressionally mandated minimum. Thus, if Anderson, an adult, was shown to have three previous convictions for violent felonies or drug offenses, committed on different occasions, the 21–month sentence imposed was unarguably contrary to the hortatory imperative of 18 U.S.C. § 924(e)(1), ergo, "in violation of law" and appealable by the government under 18 U.S.C. § 3742(b)(1).

■ 2. *Waiver.* Defendant also argues that the government waived its right to appeal by not explicitly referencing that right in the Agreement. Defendant says that, whereas he insisted on including language in the Agreement reserving his right to appeal the sentence imposed, the government made no such reservation and, therefore, waived any recourse to a higher court.

It seems to us that this argument stands logic on its ear. It is black letter law that plea agreements, "though part and parcel of criminal jurisprudence, are subject to contract-law standards in certain respects." *United States v. Hogan*, 862 F.2d 386, 388 (1st Cir.1988); *see also United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir. 1985) ("plea agreements are subject to contract law principles insofar as their application will insure the defendant what is reasonably due him"). Consistent with contract-law principles, we look to the lan-

---

**2.** Defendant's citation to *United States v. Jackson*, 903 F.2d 1313 (10th Cir.1990), confuses judicial discretion with prosecutorial discretion. *Cf., e.g., United States v. LaGuardia*, 902 F.2d 1010, 1015 (1st Cir.1990) (acknowledging that "[t]he prosecutor has traditionally exercised a certain degree of control over a defendant's ultimate sentence"). While it is true that Jackson could apparently have been charged and sentenced as a career criminal under 18 U.S.C. § 924(e)(1), and was not, that was part of a

"very favorable plea arrangement" between the defendant and the prosecutor. *Jackson*, 903 F.2d at 1321. Here, where there was no such plea arrangement, and the prosecutor seasonably apprised the defendant and the district court of his intention to invoke the enhancement provisions, the language of the statute required the district judge to impose no less than the minimum mandatory sentence if the requisite preconditions were established.

guage of the document, focusing squarely within its four corners. *See Hogan,* 862 F.2d at 388. In this case, such scrutiny reveals an utter absence of any language conditioning defendant's plea on the government's waiver of appellate rights. To be sure, Anderson—citing the contract-law canon that any ambiguity will be construed against the drafter—contends that such a condition should be inferred from the absence of language anent the government's right to appeal. But this is a bootstrap argument, conjuring up an ambiguity where none legitimately exists.

On its face, the terms of the Agreement are clear enough: the government promises to drop the "firearms transportation" charge in exchange for defendant's admission of guilt on the two "firearms possession" charges. If defendant had wanted to condition his plea on the conferral of an incremental benefit—the prosecution's agreement to forgo its right to appeal any sentence imposed—he could have insisted that such a term be made part of the Agreement. He did not do so. Under the circumstances, we find no reason to grant him after the fact the benefit of a condition he failed to negotiate before the fact. To read the Agreement, *ex silentio,* to include a waiver by the government of its right of appeal would give defendant more than is reasonably due. *See, e.g., United States v. Fentress,* 792 F.2d 461, 464 (4th Cir.1986) ("While the government must be held to the promises it made [in a plea agreement], it will not be bound to those it did not make.").

We believe it would open Pandora's jar to adopt so free-form an interpretation of plea bargains as Anderson urges. The

Court has cautioned in connection with plea agreements that it is error for an appellate court "to imply as a matter of law a term which the parties themselves did not agree upon." *United States v. Benchimol,* 471 U.S. 453, 456, 105 S.Ct. 2103, 2105, 85 L.Ed.2d 462 (1985) (per curiam). Under traditional contract principles, we should take an opposite tack, treating a plea agreement as a fully integrated contract and enforcing it according to its tenor, unfestooned with covenants the parties did not see fit to mention. Hence, we decline to read the Agreement to imply unspoken promises—especially in light of paragraph 14 thereof, which specifically relates that "[n]o agreements, representations, or understandings have been made between the parties in this case other than those which are *explicitly* set forth in this plea agreement, and none will be entered into unless executed in writing, signed by all the parties...." (emphasis supplied).[3]

The appellee has a final fall-back position on waiver. Citing *United States v. Khoury,* 755 F.2d 1071, 1073 (1st Cir.1985), he argues that the district court, not this court, should determine the scope of the Agreement. However, "any dispute over the terms of the [plea] agreement is to be resolved by objective standards." *United States v. Krasn,* 614 F.2d 1229, 1233 (9th Cir.1980). In this case, we think the matter is clear enough to present a question of law which may be entertained without resort to ancillary factfinding.[4]

## PROCEDURAL DEFAULT

■ The appellee hypothesizes that, since the government failed to file its brief within 35 days after the date on which the

---

**3.** At the possible risk of painting the lily, we also note another fundamental flaw in Anderson's "waiver" thesis. Applying the hermeneutical principle which underlies the argument, the language of the reservation, which specifically saves only the defendant's right to appeal a sentence enhancement under the ACCA, would have to be read as a waiver of defendant's right to appeal a sentence on any other grounds, say, his right to appeal, under 18 U.S.C. § 3742(a)(3), a sentence greater than specified in the applicable guideline range. The inclusion of the reservation in the Agreement clearly could not have been meant to produce so absurd a result, limit-

ing a defendant's right of appeal in such a fundamental way. To the exact contrary, regardless of the Agreement's focus, defendant obviously remained in full possession of all his statutory rights to appeal his sentence. It follows, *pari causa,* that the same rule must apply to the government.

**4.** In any event, the district court has already expressed its views; at the sentencing hearing, the judge stated unequivocally that the government could appeal the sentence.

record was filed as required under 1st Cir. Loc.R. 35, the appeal should have been dismissed for lack of prosecution. *See* 1st Cir.Loc.R. 45 ("When a cause is in default as to the filing of the brief for appellant ... the clerk is to enter an order dismissing the appeal for want of diligent prosecution."). The appellant's brief was concededly late—but the delay apparently stemmed from an administrative mix-up (neither the government nor the appellee received the scheduling notice issued by the clerk). Accordingly, the government was allowed to file its brief out of time. Such largesse with respect to nonjurisdictional deadlines is consistent both with our Local Rules, *see, e.g.,* 1st Cir.Loc.R. 45 ("unusual circumstances" can justify setting aside a default for late filing) and with the Federal Rules of Appellate Procedure, *see, e.g.,* Fed.R.App.P. 2 (requirements may be suspended in a particular case for "good cause"). There was no error in allowing the appeal to go forward in the normal course. *Cf. In re Grand Jury (Douglas Gassiraro),* 918 F.2d 1013, 1016 n. 5 (1st Cir.1990) (per curiam) (discussing court's discretion under 1st Cir.Loc.R. 9); *United States v. Diaz–Villafane,* 874 F.2d 43, 45–46 (1st Cir.) (discussing district court's discretion to suspend application of local rules), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

### THE SENTENCE

Finding that we have jurisdiction over the government's appeal and that any tardiness in briefing was not fatal, we pass to meatier fare. Anderson pled guilty to two counts charging violations of 18 U.S.C. § 922(g). If an adult who violates that statute has accumulated three predicate convictions for violent felonies committed on different occasions, and the appropriate notice has been filed, the mandatory minimum sentence attaches. *See* 18 U.S.C. § 924(e)(1). Here, appellee admittedly amassed a trio of prior felony convictions. The lower court did not deem these convictions, despite their number, as fulfilling the statutory condition. The court erred.

■ 1. *Chronicity.* Defendant's principal argument below was that each predicate offense, including conviction therefor, had to precede the next offense in the series if both were to be considered predicate crimes for purposes of sentence enhancement under the ACCA. Because Anderson's brush with the law in North Carolina (offense December 1980; conviction February 1981) and his first Massachusetts felony conviction (offense October 1980; conviction April 1983) did not fit this pattern, he took the position that there were not three predicate crimes in the ACCA sense.

We need not linger long on this point. First, we view the plain language of the statute—which contains no such requirement—as dispositive. *Accord United States v. Schoolcraft,* 879 F.2d 64, 74 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 546, 107 L.Ed.2d 543 (1990); *see also United States v. Towne,* 870 F.2d 880, 889–90 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989); *United States v. Wicks,* 833 F.2d 192, 193 (9th Cir.1987), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *cf. United States v. Herbert,* 860 F.2d 620, 622 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989). Second, the authority relied on by the district court in engrafting a chronicity requirement onto the statute, *United States v. Balascsak,* 873 F.2d 673 (3d Cir.1989) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 138 (1990), has been effectively disowned by its natural parents. In *Schoolcraft,* 879 F.2d 64, the Third Circuit revisited the issue and held that *Balascsak* was wrong in interpreting the ACCA to require that a defendant had to be convicted of one crime before committing the crime underlying a subsequent conviction. The *Schoolcraft* court wrote: "We decline to read this [chronicity] requirement into the statute and hold, for the purposes of enhanced sentencing under the ACCA, that a defendant need not be convicted of one predicate offense before committing the next predicate offense." *Id.* at 74.

Last but not least, our own precedent plainly adumbrates the result which must

obtain. In *United States v. Gillies,* 851 F.2d 492 (1st Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988), we read the language of section 924(e)(1) to require no more than that the three prior violent felony convictions involve separate criminal episodes. *Id.* at 497 (finding that two robberies occurring on consecutive days at different places, and for which defendant received concurrent sentences, were distinct episodes, thus counting as two of the three requisite predicate offenses for purposes of the ACCA). *Accord Schoolcraft,* 879 F.2d at 74; *Towne,* 870 F.2d at 891. Here, where there is no dispute that the appellee's three offenses occurred on three distinct occasions, the "separate episodes" test adopted in *Gillies* was satisfied. No more was needed.

We hold that for the purpose of enhanced sentencing under the ACCA, a defendant's conviction for one predicate offense need not precede the commission of the next predicate offense. The district court's contrary conclusion cannot stand.

■ 2. *Classification.* Defendant's other basis for asserting that he was not subject to an enhanced sentence under the ACCA is even more tenuous. He contends that his North Carolina conviction for breaking and entering was not a violent felony and thus not a predicate offense for purposes of the statute.[5] Under the precedent pertaining in this circuit when Anderson was sentenced, breaking and entering, at least under Massachusetts state law, qualified as a predicate offense for ACCA purposes. *See United States v. Twomey,* 884 F.2d 46, 53 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990); *Patterson,* 882 F.2d at 604. Since Anderson was sentenced, any vestige of a doubt about whether the North Carolina conviction represented a violent felony has been removed. *See Taylor v. United States,* —— U.S. ——, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990) (regardless of nomenclature, "generic" burglaries, that is, offenses which "hav[e] the

basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," comprise § 924(e) predicates). Anderson's North Carolina conviction for breaking and entering clearly qualifies as a predicate offense under the *Taylor* definition. And since Anderson concedes that his other two convictions were appropriately counted, the statutory preconditions for sentence enhancement were present.

## CONCLUSION

We need go no further. For the reasons stated, we find that the defendant's sentence was imposed in violation of law. We therefore vacate the sentence and remand to the district court for resentencing. We see no reason why the further proceedings should not be handled by the district judge thus far presiding.

*Vacated and remanded.*

----

5. Having shelved the ACCA on a different ground, the district court never ruled on this initiative.