USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1306 UNITED STATES, Appellee, v. PEDRO ARISMENDY OLIVIER-DIAZ a/k/a ARTY, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Barbadoro,* District Judge. ______________ ____________________ George L. Garfinkle with whom Jeffrey A. Denner and Perkins, _____________________ __________________ ________ Smith & Cohen were on brief for appellant. _____________ Margaret D. McGaughey, Assistant United States Attorney, with _______________________ whom Jay P. McCloskey, United States Attorney, and Jonathan Toof, __________________ ______________ Assistant United States Attorney, were on brief for appellee. ____________________ December 22, 1993 ____________________ _____________________ *Of the District of New Hampshire, sitting by designation. BARBADORO, District Judge. Defendant Pedro _______________ Arismendy Olivier-Diaz appeals from the sentence he received after he was found guilty of conspiracy to possess cocaine with intent to distribute and aiding and abetting the distribution of cocaine. See 21 U.S.C. 841(a)(1), 841 ___ (b)(1)(c), 846, and 18 U.S.C. 2. Arismendy challenges his sentence on two grounds. First, he contends that the district court erred in calculating his offense level under the federal sentencing guidelines when it (1) relied on the testimony of an allegedly untrustworthy witness to determine the amount of cocaine involved in the conspiracy and (2) concluded on the basis of inadequate evidence that he acted as an organizer or leader of a criminal activity involving five or more participants. Second, he claims for the first time on appeal that the court engaged in "double counting" when it increased his criminal history category by using prior convictions that allegedly resulted from the conspiracy on which his federal sentence was based. Finding no reversible error, we affirm Arismendy's sentence in all respects. I. BACKGROUND A. The Offenses ____________ During the fall of 1990, Arismendy met Ramon Verona, a small-time drug dealer, and offered to sell him cocaine. 2 Verona initially declined. However, he later contacted Arismendy on two occasions and purchased 125 grams of cocaine on credit. Two or three months later, Arismendy persuaded Verona and an unidentified woman to make several trips from New York to Massachusetts to transport cocaine. Once in Massachusetts, Verona and the courier delivered the cocaine to a confederate of Arismendy's whom Verona knew only as "Giovanni." For each trip, Verona was paid $500 and supplied with 125 grams of cocaine on credit. Verona used the cocaine he obtained from Arismendy to supply three of his customers in Maine, Peter Lauzier, Vicki Hall and Pauline Rivard. Because Verona ran the cocaine operation on credit, however, debt collection quickly became a significant problem. By May 1991, Rivard owed Verona approximately $16,000 for "fronted" cocaine, $4,000 of which was owed to Arismendy. Arismendy's solution to this problem was to recruit Verona's paramour, Argentina Dalmassi, and three men, to travel with him to Maine to collect the debt. On June 2, 1991, the group arrived at Rivard's home and confronted her boyfriend, Robert Pelletier. When Pelletier informed them that Rivard was not at home, Arismendy and the three men ransacked the house, taking some cash and some jewelry. As they were leaving, Arismendy proposed that he take possession of Pelletier's boat and provide Pelletier with cocaine to sell until he paid back what Rivard owed. Later that day, Arismendy encountered Rivard at a nearby flower shop and demanded payment. Although she believed 3 that she only owed money to Verona, Rivard promised to pay Arismendy the next day. Moments later, Dalmassi appeared, slapped Rivard in the face and demanded immediate payment. Arismendy, however, ordered Dalmassi to leave. The group was arrested on charges related to this collection attempt but they were all released on bail later that day. Fearing for her safety when she learned of their release, Rivard went to the authorities and offered to cooperate. In July 1991, Arismendy, unbeknownst to Verona, began distributing cocaine directly to Lauzier and Hall. For the next several months, Arismendy supplied them with two to ten ounces of cocaine every other week. In early October, a customer contacted Lauzier and Hall and asked to purchase cocaine. In response, Lauzier and Hall went to a trailer owned by their friend, Elwin Baker, weighed the cocaine in Arismendy's presence, and drove to a local bar to make the sale. They were immediately arrested, however, because their customer sold the cocaine to an undercover officer of the Maine Bureau of Intergovernmental Drug Enforcement (MBIDE). Arismendy, who was waiting to be paid for the cocaine, became concerned after Lauzier and Hall failed to return, and he sent Baker out to search for them. When Arismendy learned that they had been arrested, he had Baker drive him back to his home in New York. Arismendy later placed Baker in charge of Lauzier and Hall's business and sold him as much as eight ounces of cocaine at a time. 4 Arismendy was arrested by the MBIDE in January 1992 and was subsequently convicted of the present federal charges in the United States District Court for the District of Maine. 5 B. The Sentence ____________ The court held a sentencing hearing on February 26, 1993. Verona was called as a witness at the hearing and cross examined by the defense in an effort to attack his trial testimony. During this examination, Verona testified that he had made at least four trips from New York to Massachusetts, transporting seven kilograms of cocaine on the first trip, and added, "I don't remember well, but I think the other [trips] were about 10 kilograms each." This testimony differed slightly from his trial testimony where he had claimed that he had made "five or six trips" and had delivered seven kilograms of cocaine on the first two trips and ten kilograms on each remaining trip. In determining Arismendy's total offense level, the district court first grouped the two counts on which Arismendy had been convicted, see U.S.S.G. 3D1.2(d), and set his base ___ offense level at 34 because it found that Arismendy's conduct involved approximately 36 kilograms of cocaine. See U.S.S.G. ___ 2D1.1(c)(5) (Drug Quantity Table) (establishing base offense level 34 for conduct involving "[a]t least 15 KG but less than 50 KG of Cocaine"). The court then found that Arismendy had been an organizer or leader of a criminal activity involving five or more participants and added four levels to his base offense level. See ___ U.S.S.G. 3B1.1(a). Finally, because Arismendy had received two firearms as partial payment for cocaine, the court made an additional two-level increase to his offense level. See U.S.S.G. ___ 6 2D1.1(b)(1). These calculations resulted in a total offense level of 40. The court then placed Arismendy in criminal history category II by assigning one criminal history point to prior State of Maine convictions for theft and criminal threatening and a second point to a prior State of New York conviction for operating a motor vehicle while impaired by alcohol. See U.S.S.G. ___ 4A1.1(c). Accordingly, the court determined Arismendy's guideline sentencing range to be 324-405 months. The court then sentenced Arismendy to 365 months in prison, five years of supervised release and a $5,000 fine. This appeal followed. II. DISCUSSION A. The Offense Level _________________ Arismendy challenges two steps in the district court's offense level computation. We consider his claims "mindful that we must both 'accept the findings of fact of the district court unless they are clearly erroneous' and 'give due deference to the district court's application of the guidelines to the facts.'" United States v. Ruiz, 905 F.2d 499, 507 (1st Cir. 1990) (quoting _____________ ____ 18 U.S.C. 3742(e)). 1. Cocaine Quantity ________________ Arismendy's first argument is that the sentencing court erroneously relied on Verona's testimony in determining the 7 amount of cocaine involved in the conspiracy because Verona offered uncorroborated and self-contradictory testimony in an effort to receive favorable treatment from the government. We reject this contention. Arismendy's counsel forthrightly conceded at oral argument that if Verona's testimony were believed, his claim would collapse. Given this concession, we easily conclude that the district court did not err in its drug quantity determination. The record shows unequivocally that after considering the evidence and rejecting the same arguments now raised on appeal, the court found Verona's testimony to be credible. In the absence of clear error, such assessments are exclusively within the province of the sentencing court. We find no such error here. Cf. id. at 508 ___ ___ ("where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous"). 2. Leadership Role _______________ Arismendy next claims that the district court committed clear error when it increased his offense level by four levels because of his alleged leadership role in the conspiracy. See U.S.S.G. 3B1.1(a). He contends that the enhancement was ___ improper because the evidence established only that he acted alone in selling cocaine to multiple "independent customers." We disagree. Two conditions must be met before a leadership role enhancement is in order under U.S.S.G. 3B1.1(a). See United ___ ______ 8 States v. Preakos, 907 F.2d 7, 9 (1st Cir. 1990) (per curiam). ______ _______ First, the sentencing court must find that the defendant acted as "an organizer or leader of a criminal activity." Second, the activity must have "involved five or more participants or was otherwise extensive." See United States v. McDowell, 918 F.2d ___________________ ________ 1004, 1011 (1st Cir. 1990) (quoting U.S.S.G. 3B1.1(a)). In determining whether a defendant had a leadership role in criminal activity, the commentary to section 3B1.1 instructs courts to consider such factors as decision making authority, recruitment of accomplices, degree of participation in planning the offense, degree of control over others, and a claimed right to a larger share of the fruits of the crime. U.S.S.G. 3B1.1, comment. (n.4); see also Preakos, 907 F.2d at 9. Because ___ ____ _______ such "role in the offense" assessments are fact-specific, the district court's views must be accorded "considerable respect." See United States v. Ocasio, 914 F.2d 330, 333 (1st Cir. 1990). ___ _____________ ______ The instant record amply supports the district court's conclusion that Arismendy was an organizer or leader of the drug distribution conspiracy. The court could reasonably have inferred from the trial evidence that Arismendy: (1) initiated cocaine discussions with Verona; (2) convinced Lauzier and Hall to work with him; (3) attempted to persuade Pelletier to sell cocaine for him; (4) actively supervised the collection of debts; (5) instructed Baker to take over the Maine distribution business after Lauzier and Hall were arrested; and (6) exercised a high degree of decision making authority both in organizing the multi-kilogram 9 cocaine shipments from New York to Massachusetts and in directing and coordinating Verona and the female courier. Given these permissible inferences, the court was not clearly erroneous in finding that Arismendy was an organizer or leader of the criminal activity. Cf., e.g., Preakos, 907 F.2d at 9-10 (upholding ___ ____ _______ enhancement where defendant, among other things, "exercised control over his distributors, at least in the sense that he directed them with regard to their role in the various cocaine shipments and apparently coordinated aspects of the distribution"). The district court also could have plausibly concluded from the record that five or more participants were involved in Arismendy's criminal activity. Under section 3B1.1(a), a "participant" is any person, including the defendant, who is "criminally responsible for the commission of the offense . . . ." See U.S.S.G. 3B1.1, comment. (n.l); see also Preakos, 907 ___ ___ ____ _______ F.2d at 10 (defendant included as a participant under U.S.S.G. 3B1.1(a)). Even without counting the persons Arismendy claims were merely customers, at least five others, including Arismendy, Verona, the female courier, Giovanni, and one or more of the four debt collectors, could reasonably have been considered participants in Arismendy's criminal activity. Thus, we find no clear error in the sentencing court's determination. B. The Criminal History Category _____________________________ Arismendy's final contention is that the district court engaged in "double counting" when it used the theft and 10 criminal threatening convictions -- which, appellant claims, resulted from his June 1991, collection attempt against Rivard -- to increase his criminal history category. Arismendy bases this claim on section 4A1.2(a)(1) of the Guidelines, which provides that in computing a defendant's criminal history, a court may count only sentences that were "previously imposed . . . for conduct not part of the instant offense." He contends that because the theft and criminal threatening convictions resulted from conduct that was part of the federal drug distribution conspiracy, these convictions cannot be used to increase his criminal history category. Since Arismendy did not raise this claim in the district court, his sentence can be reversed on this basis only upon a showing of "plain error." See Fed. R. Crim. P. 52(b). He has failed to make ___ such a showing here. Three criteria restrict a reviewing court's authority to reverse a sentence under the plain error rule. First, a reviewable error must have occurred during the sentencing process. Second, the error must be "clear" or "obvious." Third, the error must affect "substantial rights," which in most cases means that the defendant must make a specific showing that the error probably affected his sentence. United States v. Carrozza, 4 _____________ ________ F.3d 70, 87-88 (1st Cir. 1993)(citing United States v. Olano, 113 ______ _____________ _____ S. Ct. 1770, 1777-78 (1993)). Even if all three criteria have been satisfied, the reviewing court retains the discretion not to correct an error, however plain, unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial 11 proceedings." Olano, 113 S. Ct. at 1779 (quoting United States v. _____ _____________ Atkinson, 297 U.S. 157, 160 (1936)). ________ Applying the plain error standard, we reject Arismendy's double counting argument without reaching its merits. Where the error defendant asserts on appeal depends upon a factual finding the defendant neglected to ask the district court to make, the error cannot be "clear" or "obvious" unless the desired factual finding is the only one rationally supported by the record below. See United States v. Gaudet, 966 F.2d 959, 962 (5th Cir.), reh'g ___ _____________ ______ _____ denied, 973 F.2d 927 (1992), cert. denied, 113 S. Ct. 1294 (1993). ______ _____ ______ Here, Arismendy's double counting argument depends upon his claim that the theft and criminal threatening convictions resulted from the unsuccessful effort to collect Rivard's cocaine debt. However, the record on this subject is equivocal at best. The Presentence Report describes the theft and criminal threatening convictions without stating whether they resulted from Arismendy's attempt to collect Rivard's debt. Moreover, the Report states that Arismendy was arrested on the theft and criminal threatening charges on August 7, 1991, whereas the unrebutted evidence produced at trial established that Arismendy was arrested for his role in the debt collection effort on June 2, 1991. Since Arismendy never challenged this portion of the Presentence Report, the only support for his argument in the record is that his attempt to collect Rivard's cocaine debt involved conduct that could have resulted in theft and criminal threatening convictions. While we might infer from this evidence that the theft and criminal threatening charges 12 and the debt collection effort are related, the record also amply supports the opposite conclusion. We therefore cannot conclude that the district court committed obvious error in using the theft and criminal threatening convictions to enhance his criminal history category. III. CONCLUSION For the reasons expressed above, Arismendy's sentence is affirmed. ________ 13