# United States Court of Appeals
## For the First Circuit

No. 99-1053

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL ORTIZ-SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Torruella, Chief Judge,

Selya and Lipez, Circuit Judges,

Carlos Rodriguez Garcia for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney, were on brief, for appellee.

May 2, 2000

**SELYA, Circuit Judge.** Much to his later chagrin, defendant-appellant Angel Ortiz-Santiago (Ortiz) joined a massive conspiracy that imported drugs into Puerto Rico and then distributed them. Ortiz participated in a successful November 1996 smuggle and an unsuccessful December 1996 smuggle that came to naught when federal authorities seized the drugs. On the first occasion he helped to off-load the contraband and on the second he served as a lookout.

In due course, a federal grand jury returned a twenty-one count indictment against more than four dozen defendants. Three counts targeted the appellant: an omnibus count that charged the master conspiracy and specific transaction counts corresponding to the two smuggles in which he had participated. Attorneys for the appellant and the government proceeded to negotiate a non-binding plea agreement (the Agreement) under the aegis of Fed. R. Crim. P. 11(e)(1)(B). The Agreement provided in substance that the appellant would plead guilty to the conspiracy count, and that the government would dismiss the other charges against him. The Agreement further contemplated that the government would (a) seek to hold the appellant responsible for only 50-150 kilograms of cocaine, (b) recommend an optimum three-level credit for acceptance of responsibility,

see USSG §3E1.1, and (c) recommend a sentence at the nadir of the applicable guideline sentencing range.

At the disposition hearing, the appellant requested three other dispensations: a downward departure, a role-in-the-offense adjustment, and recourse to the so-called "safety valve" provision. The court rebuffed all three requests. It then premised the appellant's base offense level on the parties' drug quantity stipulation, reduced the offense level by applying the three-level adjustment for acceptance of responsibility, dismissed the "specific transaction" counts, computed the guideline sentencing range at 135-168 months, and imposed a 135-month incarcerative sentence. The sentence exceeded the ten-year mandatory minimum sentence applicable to the offense of conviction. See 21 U.S.C. § 841(b). This appeal ensued.

The appellant launches a multi-pronged attack on his conviction and sentence. We arrange his contentions in groups and discuss them sequentially.

**I**

The appellant asseverates that the district court erred in failing to grant his request for a downward departure. He sought that largesse under the Sentencing Guidelines' general departure provision, which permits a court to sentence outside the applicable guideline range if it discerns significant

atypicality due to an aggravating or mitigating circumstance not adequately taken into account by the Sentencing Commission. See USSG §5K2.0; see also 18 U.S.C. § 3553(b). The operation of this provision depends, to a large extent, on the informed discretion of the sentencing judge. See Koon v. United States, 518 U.S. 81, 98 (1996); United States v. Snyder, 136 F.3d 65, 68 (1st Cir. 1998).

Here, the appellant predicated his departure request on his responsibility to care for his ailing father. The record makes manifest that the trial court knew that it could have departed had it found that the appellant's family situation warranted such a benefice. The court, however, considered and rejected the claimed mitigation.

We cannot second-guess this implicit conclusion that the appellant's familial responsibilities did not sufficiently distinguish his case from the mine-run. The court of appeals has no authority to review a district court's discretionary decision not to depart, whether upward or downward, unless the putative appellant can show that the district court acted in the mistaken belief that it lacked the ability to depart. See United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994); United States v. Hilton, 946 F.2d 955, 957 (1st Cir. 1991). The appellant has made no such showing. His case thus fits snugly

within the general rule, not within the long-odds exception to it. Consequently, we lack jurisdiction to entertain his plaint. See United States v. Rivera-Maldonado, 194 F.3d 224, 236 (1st Cir. 1999) (refusing to review a district court's denial of a section 5K2.0 departure request based on family hardship).

## II

The appellant next assails the lower court for refusing to make a downward role-in-the-offense adjustment. In mounting this attack, he points out that, whereas the drug-smuggling ring cut quite a wide swath, his participation was limited to infrequent, relatively low-level tasks. Because he acted once as a stevedore and once as a lookout, nothing more, he claims an entitlement to a reduced offense level. See USSG §3B1.2 (describing possible offense-level adjustments for defendants who occupy "minor" or "minimal" roles).

Role-in-the-offense determinations are notoriously fact-sensitive, and this case is no exception. The party seeking the adjustment bears the burden of persuasion. See United States v. Ocasio, 914 F.2d 330, 332-33 (1st Cir. 1990). Moreover, appellate review is deferential: the district court's resolution of a dispute over a defendant's role is reviewed only for clear error. See id. at 333. "Thus, absent a mistake of

law, battles over a defendant's status . . . will almost always be won or lost in the district court."  United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).

These principles control here.  As the phrase implies, a minimal participant is one who "plays a minimal role in concerted activity."  USSG §3B1.2, comment. (n.1).  The district court found that this description did not fit the appellant.  In view of the appellant's on-the-scene involvement in two large-scale smuggles, that finding is not open to serious challenge.  See, e.g., United States v. Dimarzo, 80 F.3d 656, 662 (1st Cir. 1996); United States v. Munoz, 36 F.3d 1229, 1238 (1st Cir. 1994); see also United States v. McCarthy, 97 F.3d 1562, 1573 (8th Cir. 1996) (affirming decision not to treat lookout in large marijuana processing conspiracy as "minimal" participant).

The second wave of the appellant's attack presents a closer call.  Although involved in two smuggles, the appellant performed only menial tasks and his argument for classification as a minor participant is not without force.  The standard of review looms large, however, and in the final analysis we uphold the district court's contrary determination.

A minor participant "means any participant who is less culpable than most other participants, but whose role could not be described as minimal."  USSG §3B1.2, comment. (n.3).  The

defendant has the burden of proving that he is both less culpable than most others involved in the offense of conviction and less culpable than most other miscreants convicted of comparable crimes. See United States v. Isienyi, ___ F.3d ___, ___ (7th Cir. 2000) [2000 WL 291182, at *2]; Ocasio, 914 F.2d at 333; see also USSG §3B1.2, comment. (n.3 & backg'd.). The sentencing court supportably found that the appellant had unloaded a sizable drug shipment and had conducted surveillance as a member of the conspiracy, and that this participation, while peripheral in a sense, was enough to warrant categorizing him as a player rather than as a dabbler.

In the sentencing court's view, this conclusion was fortified by the fact that the government had not charged the appellant with anything near the full drug quantity attributable to the conspiracy.[1] A defendant cannot insist on having it both ways: if he receives a reduced offense level because the government agrees to understate the quantity of drugs with which he has been involved, the sentencing court, if it sees fit, may keep the scales of justice balanced by denying him the added

---

[1]The government had agreed to limit the drug quantity to 50-150 kilograms of cocaine. To place this into perspective, we note that the authorities had seized approximately 1,000 kilograms of cocaine at the time of the December 1996 smuggle alone, not to mention quantities of heroin and marijuana. The November 1996 affair involved additional (not insubstantial) amounts of contraband.

benefit of a mitigating role adjustment.  See Isienyi, ___ F.3d at ___ [2000 WL 291182, at *2]; McCarthy, 97 F.3d at 1574; see also USSG §3B1.2, comment. (n.4).  Given this background, we cannot say that the district court clearly erred in not finding that the appellant was entitled to a downward role-in-the-offense adjustment.[2]  See Isienyi, ___ F.3d at ___ [2000 WL 291182, at *2]; Rivera-Maldonado, 194 F.3d at 234; Graciani, 61 F.3d at 75; Ocasio, 914 F.2d at 333.

### III

The appellant's third argument is a variation on the foregoing themes.  Citing  United States v. Goodwin, 457 U.S. 368, 380-81 (1982), and United States v. Marrapese, 826 F.2d 145, 147 (1st Cir. 1987), he theorizes that the prosecutors were disappointed that he could give them no useful information about the activities of the ring; that this disappointment led them to become vindictive; and that this vindictiveness prompted them to misrepresent key facts and oppose any leniency (such as a downward departure or role-in-the-offense adjustment).

---

[2]Because this claim falters on the facts, we do not need to consider at any length the possible effect of the Agreement's "no further adjustments" clause (discussed in section IV, infra).  We note, however, that while the parties' consent to eschew an adjustment, expressed in a non-binding plea agreement, does not deprive the sentencing court of power to make the adjustment, see Fed. R. Crim. P. 11(e)(1)(B), it nonetheless may be considered by the court for what evidentiary value it may possess.

This suppositious chain of inferences need not detain us. Absent some evidentiary predicate, direct or circumstantial — and we discern none in the appellant's wholly conclusory presentation — merely chanting the mantra of prosecutorial vindictiveness gets a defendant nowhere. See United States v. Lanoue, 137 F.3d 656, 665 (1st Cir. 1998); United States v. Stokes, 124 F.3d 39, 46 (1st Cir. 1997); United States v. Sutherland, 929 F.2d 765, 772 n.2 (1st Cir. 1991).

To be sure, the appellant points to one hard fact: he notes that certain other coconspirators pled guilty and then received somewhat shorter sentences than he did. But this circumstance does not advance his cause. Disparity in sentencing amongst coconspirators, without more, is not enough to justify a downward departure. See United States v. Wogan, 938 F.2d 1446, 1448 (1st Cir. 1991). By like token, such differentials, in and of themselves, are inadequate to raise a presumption of prosecutorial vindictiveness. See United States v. Ellis, 975 F.2d 1061, 1066 & n.2 (4th Cir. 1992); cf. United States v. Rodriguez, 162 F.3d 135, 151-52 (1st Cir. 1998) (discussing wide variety of factors that might justify disparate sentences as between coconspirators), cert. denied, 526 U.S. 1152 (1999).

**IV**

-9-

The most salient issue in this appeal implicates the district court's conclusion that the appellant did not qualify for the safety valve. Insofar as such a ruling hinges on differential factfinding, we review it for clear error. See United States v. Miranda-Santiago, 96 F.3d 517, 527 (1st Cir. 1996). Here, however, the material facts are not in genuine dispute and the court's ruling rests on a determination of law. Hence, our review is plenary. See United States v. White, 119 F.3d 70, 73 n.6 (1st Cir. 1997).

Congress enacted the safety valve provision, 18 U.S.C. § 3553(f), in order to mitigate the harsh effect of mandatory minimum sentences on certain first offenders who played supporting roles in drug-trafficking schemes. See Miranda-Santiago, 96 F.3d at 527 & n.22 (citing H.R. Rep. No. 103-460, 2d Sess., at 4 (1994)). The Sentencing Commission then incorporated the statutory text verbatim into the Sentencing Guidelines. See USSG §5C1.2. When applicable, these provisions mandate both reduction of the defendant's offense level and judicial disregard of statutes imposing mandatory minimum sentences.[3] The safety valve applies if

---

[3]Here, for example, the safety valve, if applicable, would operate to reduce the appellant's base offense level by two levels, yielding a guideline sentencing range of 108-135 months.

> (1) the defendant does not have more than 1 criminal history point . . . ;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . ; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f); USSG §5C1.2.

The record strongly suggests — and at oral argument in this court the Assistant United States Attorney pretty much conceded — that the appellant satisfies all these criteria: he has no prior criminal record; he did not carry a firearm, threaten violence, engage in activity that was shown to involve death or serious bodily harm to others, or occupy a leadership role in the criminal enterprise. Moreover, he seems to have been forthcoming in his post-arrest discussions with the authorities. Citing these facts, the appellant's counsel asked the sentencing court to apply the safety valve. The government objected, asserting that the request contravened the Agreement. The court accepted this assertion. We do not.

The language in the Agreement on which the government relied declares that, aside from those adjustments that are expressly delineated in the Agreement, "no further adjustments to the defendant's total offense level shall be made." We do not believe the quoted language can support the gloss that the government places upon it, or that it can be read to bar judicial recourse to the safety valve. We explain briefly.

In general, courts interpret plea agreements more or less as contracts. See United States v. Alegria, 192 F.3d 179, 183 (1st Cir. 1999). "That means, of course, that an inquiring court should construe the written document within its four corners, 'unfestooned with covenants the parties did not see fit to mention.'" Id. at 185 (quoting United States v. Anderson, 921 F.2d 335, 338 (1st Cir. 1990)). We have been scrupulous in holding defendants to the terms of the plea agreements that they enter knowingly and voluntarily, see, e.g., id.; United States v. Guzman, 85 F.3d 823, 829 (1st Cir. 1996); Anderson, 921 F.2d at 337-38; United States v. Hogan, 862 F.2d 386, 388-89 (1st Cir. 1988), and we must be equally steadfast in dealing with the government, cf. United States v. Caraballo-Cruz, 52 F.3d 390, 393 (1st Cir. 1995) (explaining that, "in fairness, what is sauce for the defendant's goose is sauce for the government's gander").

The term "adjustments," when used in the federal sentencing context, simply does not encompass the safety valve provision. Chapter three of the Guidelines Manual, entitled "adjustments," describes a variety of potential increases and decreases that may be made in the course of determining a defendant's adjusted offense level. That chapter does not mention the safety valve — a provision that is located in chapter five, see USSG §5C1.2, along with other provisions that guide the ultimate sentencing determination. Those provisions operate dehors the Sentencing Guidelines proper. See United States v. Joetzki, 952 F.2d 1090, 1097 (9th Cir. 1991). Thus, the items delineated in chapter five, including the safety valve, are not "adjustments." In the case of the safety valve, this distinction is critical: the safety valve is not intended to affect the calculation of the defendant's offense level per se, but, rather, to operate as a limitation on the applicability of mandatory minimum sentences. See United States v. Scharon, 187 F.3d 17, 22 (1st Cir. 1999); H.R. Rep. No. 103-460, supra. The short of it is that the language in the Agreement to which the government alludes cannot be stretched to relate to the safety valve.

If any doubt remains — and we have none — this conclusion is bolstered by considering the nature of the safety

valve. Even within chapter five, the safety valve is <u>sui</u> <u>generis</u>. While it operates somewhat like a downward departure (i.e., it yields, in the end, a reduced sentence), an important difference exists. Departures are inherently permissive, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Dethlefs</u>, 123 F.3d 39, 44-45 (1st Cir. 1997), whereas the safety valve — when it applies — is mandatory. Congress provided in clear language that, if a defendant satisfies the statutory criteria (virtually all of which are objective), the court <u>shall</u> disregard the mandatory minimum and fashion the sentence accordingly. <u>See</u> 18 U.S.C. § 3553(f); <u>accord</u> USSG §5C1.2; <u>see</u> <u>also</u> <u>Miranda-Santiago</u>, 96 F.3d at 528 (noting that if "a defendant has met the five requirements of the [safety valve], the judge is required to set aside the mandatory minimum").

The obligatory nature of the provision possesses decretory significance for the purposes of this case. In a non-binding plea agreement, the government cannot contract around the safety valve; the most that it can do is attempt to persuade the sentencing court that the provision does not apply. <u>See</u> Fed R. Crim. P. 11(e)(1)(B); <u>see</u> <u>also</u> <u>United States</u> v. <u>Bradstreet</u>, ___ F.3d ___, ___ (1st Cir. 2000) [No. 99-1267, slip op. at 10] ("Sentencing, after all, is a matter for the district court and not for the government."). The court then must pass upon the

matter, exercising its independent judgment. See United States v. Thompson, 81 F.3d 877, 880 (9th Cir. 1996). In that exercise, the court must bear in mind that the safety valve is a congressional directive. The court cannot reject it on equitable grounds, but must sift through the statutory criteria and, if it determines that those criteria have not been met, must elucidate specific reasons why the provision does not apply. See Scharon, 187 F.3d at 23 (finding "bare conclusions" insufficient to disqualify defendant from safety valve); Miranda-Santiago, 96 F.3d at 529-30 (similar).

In this instance, the court made no such findings. It simply concluded that the Agreement blocked the application of the safety valve. In reaching this conclusion, it gave to the Agreement more force than it deserved and read into it an understanding that was not conveyed in the text. In these respects, the court erred as a matter of law. Consequently, the appellant's sentence must be vacated and the case remanded for resentencing.

**V**

We have one more bridge to cross. When the probation department produced the appellant's presentence investigation report (PSI Report), difficulties immediately became apparent. The government had for some unexplained reason created two

-15-

different versions of the facts anent Ortiz's culpability. One version (which had been used during the change-of-plea colloquy and in the Agreement) accurately limited his participation to surveillance and off-loading. The PSI Report, however, contained a different, more sinister version — one which included apparently erroneous statements to the effect that the appellant had distributed cocaine and helped to collect drug-trafficking proceeds. To make a bad situation worse, the PSI Report characterized both surveillance and unloading in the plural, making it appear that the appellant had performed each task more than once.

The appellant objected to these rather blatant inaccuracies. The district court indicated its awareness of the true facts and stated that it would ignore the unfounded allegations and correct the PSI. The appellant complains that the district court should have followed through on this pledge. We agree.

Fed. R. Crim. P. 32(c)(1) provides that the district court, when faced with a timely challenge, must deal with factual disputes about material contained in a PSI Report in one of two ways: either resolving the conflict or deeming the material irrelevant to the sentencing determination. See United States v. Van, 87 F.3d 1, 3 (1st Cir. 1996) (explicating

operation of Rule 32(c)).  But the court also must correct the error or otherwise indicate in writing that the challenged material is either wrong or irrelevant.  See United States v. Levy, 897 F.2d 596, 599 (1st Cir. 1990).  Insistence on this protocol is not mere pettifoggery:  corrections to the PSI Report are important because the Report will follow the defendant as he passes through the justice system affecting classification decisions and a wide variety of other determinations.

On this occasion, the district court stated that it would see that the necessary corrections were made, but, for aught that appears, did not follow through.  The court should have appended an appropriate written statement to the PSI Report or otherwise ensured that the necessary modifications were made. On remand, the court should attend to this detail.  See id.

**VI**

We need go no further.  For the reasons stated, we vacate the appellant's sentence and remand for resentencing consistent with this opinion.

**Vacated and remanded.**