# United States Court of Appeals
## For the First Circuit

No. 02-1155

UNITED STATES OF AMERICA,

Appellee,

v.

ELVY MARTINEZ-VARGAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Eileen F. Shapiro, by appointment of the court, on brief for appellant.
Margaret E. Curran, United States Attorney, Donald C. Lockhart and Mary E. Rogers, Assistant United States Attorneys, on brief for appellee.

March 4, 2003

**SELYA**, <u>Circuit Judge</u>.  Defendant-appellant Elvy Martinez-Vargas pleaded guilty both to conspiring to possess with intent to distribute five kilograms or more of cocaine and to a related attempt count.  <u>See</u> 21 U.S.C. §§ 841(a)(1), 846.  He now appeals his sentence, arguing that the district court should have credited him for a mitigating role in the offense of conviction and that his sentence was tainted by ineffective assistance of counsel.  Concluding, as we do, that the first claim is unavailing and the second unripe, we affirm the appellant's sentence.

We draw the relevant facts from the change-of-plea colloquy, the presentence investigation report (PSI Report), the disposition hearing, and the documents of record.  <u>See</u> <u>United States</u> v. <u>Dietz</u>, 950 F.2d 50, 51 (1st Cir. 1992).

The events giving rise to the appellant's arrest had their genesis in a call placed by a cooperating witness, functioning under the auspices of the Federal Bureau of Investigation, to the appellant's brother, José Correa.[1]  The caller offered to bring five kilograms of cocaine from New York to Rhode Island.  Correa agreed to purchase the contraband, and the parties arranged to consummate the transaction on July 16, 2001.

At the appointed time and place, an undercover officer posed as a drug courier.  Correa and the appellant approached the

---

[1]"José Correa" is an alias assumed by Domingo Martinez.  For simplicity's sake, we shall continue to refer to him by his pseudonym.

officer's vehicle to take delivery of the drugs, and the trap snapped shut. A search of their minivan turned up $15,400 in cash. A subsequent search of Correa's residence netted an additional $16,380 in cash.

On August 8, 2001, a federal grand jury indicted Correa and the appellant. Both men initially proclaimed their innocence. On November 2, 2001, Correa changed his plea. As he is not a party to this appeal, we make no further reference to the proceedings against him.

The district court had scheduled the case for trial on November 6, 2001. Rather than stand trial, the appellant decided to plead guilty. The court accepted his changed plea, continued the matter for sentencing, and commissioned the preparation of the PSI Report. The court specifically advised the appellant that, when the PSI Report was ready, he would have a right to review it with counsel and to object to it. The court emphasized that any objections not lodged within 14 days after the PSI Report was made available would not be considered.

The probation department completed the PSI Report on December 19, 2001. It suggested that the court employ a base offense level of 32, see USSG §2D1.1(c)(4), and deduct two levels for acceptance of responsibility under USSG §3E1.1(a). Because the appellant apparently qualified for an additional two-level decrease under the so-called "safety valve" provision, see 18 U.S.C. §

3553(f); see also United States v. Marquez, 280 F.3d 19, 21-22 (1st Cir. 2002); United States v. Ortiz-Santiago, 211 F.3d 146, 150-51 (1st Cir. 2000),[2] the PSI Report recommended an adjusted offense level of 28. That offense level, together with a criminal history category of I — the appellant had no prior criminal record — yielded a guideline sentencing range of 78 to 97 months.

In response to the PSI Report, the appellant proffered only a single objection. This objection focused on the drug quantity calculation used to determine his base offense level. He did not object either to (1) the use of a two-level adjustment, rather than a three-level adjustment, for acceptance of

---

[2] We explained in Ortiz-Santiago that "Congress enacted the safety valve provision, 18 U.S.C. § 3553(f), in order to mitigate the harsh effect of mandatory minimum sentences on certain first offenders who played supporting roles in drug-trafficking schemes." 211 F.3d at 150. The Sentencing Commission has incorporated the statutory text verbatim into the sentencing guidelines. See USSG §5C1.2; see also USSG §2D1.1(b)(6) (providing that if a drug-offender defendant meets the criteria set forth in section 5C1.2, the sentencing court shall decrease his offense level by two levels).

responsibility,[3] or (2) the absence of a role-in-the-offense adjustment for minor participation.

The district court convened the disposition hearing on January 25, 2002. The court resolved the question of drug quantity against the appellant, and that question is not pursued on appeal. Defense counsel then raised, for the first time, the possibility of a role-in-the-offense adjustment under USSG §3B1.2(b) (which provides that "[i]f the defendant was a minor participant in any criminal activity," the sentencing court should "decrease [his offense level] by 2 levels"). In belatedly broaching this subject, the lawyer conceded that he had not objected within the stipulated time frame and ascribed his failure to "writer's block." The court responded: "If it wasn't raised . . . under the rule it is waived. The Court made that very clear at the time the plea was accepted." The court then added:

> [I]t doesn't appear to me that there is a great deal of basis for [a role-in-the-offense reduction] here. According to the presentence report, Mr. Martinez was with the co-Defendant and both went to meet the agent and went back

---

[3]A defendant who accepts responsibility for the offense of conviction receives a basic two-level decrease in his offense level. See USSG §3E1.1(a); see also United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990). Under certain circumstances, however, a defendant who qualifies for a two-level decrease under section 3E1.1(a) may receive an additional one-level decrease if he "timely notif[ies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." USSG § 3E1.1(b)(2). Here, the sentencing court gave the appellant the basic two-level reduction, but not the extra level.

to the apartment and discussed purchasing 5 kilograms. Mr. Martinez was present at the time.

I recognize what he said in his statement of acceptance [of responsibility] that he was just along for the ride, so to speak but I am not sure if he is prepared to testify to that or not. In any event, it is too late to raise that objection.

Following the imposition of a 78-month incarcerative sentence, Martinez-Vargas filed a notice of appeal. In it, he makes two points. First, he asseverates that the sentencing court erred in denying him a role-in-the-offense adjustment under USSG §3B1.2(b). Second, he maintains that ineffective assistance of counsel elongated his sentence because it deprived him not only of the aforementioned role-in-the-offense adjustment but also of a plenary three-level reduction for acceptance of responsibility under USSG §3E1.1. We deal with these contentions sequentially, using throughout the November 2001 edition of the sentencing guidelines.

We need not tarry. Although the appellant criticizes the district court for failing to grant a two-level downward adjustment for his ostensibly minor role in the offense, he did not interpose a timely objection to the PSI Report on this basis.[4]

---

[4]To be sure, the appellant, in objecting to the drug quantity calculation, did state that he "was only there as a helper to the main player." But the appellant mentioned this datum only in connection with an unsuccessful effort to explain why he did not know the exact amount of drugs to be purchased. He never referred to the role-in-the-offense guideline, nor did he develop his

In the circumstances of this case, the absence of a timely objection might well constitute a waiver. After all, the Criminal Rules provide that the probation department shall prepare the PSI Report and furnish it to the defendant, the defendant's counsel, and the prosecutor. See Fed. R. Crim. P. 32(b)(6)(A). Then, "within 14 days after receiving the presentence report," the parties are to "communicate in writing to the probation officer, and to each other," all the objections that they may have to the "sentencing classifications" and other matters "contained in or omitted from the presentence report." Fed. R. Crim. P. 32(b)(6)(B). Not later than seven days before the disposition hearing, the probation officer must give the district court and the parties a revised PSI Report, including an addendum setting forth any unresolved sentencing objections. Fed. R. Crim. P. 32(b)(6)(C). Apart from any preserved objections, the sentencing court may "accept the presentence report as its findings of fact" without further inquiry or elaboration. Fed. R. Crim. P. 32(b)(6)(D).[5]

In the District of Rhode Island, these provisions are reinforced by a local rule, which provides that:

---

"helper" argument in any meaningful way.

[5]Fed. R. Crim. P. 32(b)(6) was recodified as Fed. R. Crim. P. 32(f) by an amendment effective December 1, 2002. The substance is unchanged. For simplicity's sake, we use the designations that were in effect on the date of the appellant's sentencing.

> Not less than 35 days prior to the date set for sentencing, the probation officer shall disclose the presentence investigation report to the defendant and to counsel for the defendant and the government. Within 14 days thereafter, counsel shall communicate to the probation officer any objections they may have as to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the report. Such communication may be oral or written, but the probation officer may require that any oral objection be promptly confirmed in writing.

D.R.I. R. 40.2(a). Further provisions in the local rules mirror the framework of the Federal Rules of Criminal Procedure. See, e.g., D.R.I. R. 40.2(b)-(d).

The time limits embedded in these rules serve a threefold purpose: they promote focused and informed resolution of disputed sentencing issues, fairness for both the government and the defendant, and efficiency in judicial administration. Cf. United States v. López-López, 295 F.3d 165, 169 (1st Cir. 2002) (explaining that "time limits are no mere technicalities; they are integral to the fair and orderly process of imposing sentence"). Thus, a party who decides to forgo a timely objection is in a poor position to complain when the sentencing court holds him to the easily foreseeable consequences of that decision.

Moreover, the district court was especially forthcoming in this instance. It called the applicable time parameters to the appellant's attention at the change-of-plea hearing, warned him no fewer than four times of the 14-day deadline, and spelled out the

-8-

consequences attendant to noncompliance. The appellant was, therefore, on both actual and constructive notice that he must set forth his specific objections to the PSI Report within the allotted time or else forever hold his peace.

In the final analysis, however, we need not go so far as to declare what happened here a waiver. Even were we to assume, favorably to the appellant, that this lapse constituted a forfeiture, rather than a waiver, that characterization would not lead to a different result. On appeal, forfeited issues are reviewed for plain error. United States v. Olano, 507 U.S. 725, 733-34 (1993); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). Under the plain error standard, an appellant must demonstrate: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). The appellant cannot clear this hurdle.

Role-in-the-offense determinations are almost always factbound. With respect to downward role-in-the-offense adjustments, the defendant bears the burden of proof. United States v. Ocasio, 914 F.2d 330, 332-33 (1st Cir. 1990). Appellate review is highly deferential: the sentencing court's determination of a defendant's role is reviewed only for clear error. Id. at

333.  "Thus, absent a mistake of law, battles over a defendant's status . . . will almost always be won or lost in the district court."  United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).

These principles are decisive here.  A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal."  USSG §3B1.2, cmt. (n.5).  To obtain a reduction for minor participant status, a defendant must prove that he is both less culpable than most other persons involved in the offense of conviction and less culpable than most other persons convicted of comparable crimes.  See Ortiz-Santiago, 211 F.3d at 149; Ocasio, 914 F.2d at 333; see also USSG §3B1.2, cmt. (n.5).  The test is even more demanding on plain error review; the defendant must show, in effect, that the status for which he argues is "the only one rationally supported by the record below."  United States v. Olivier-Diaz, 13 F.3d 1, 5 (1st Cir. 1993).  The appellant's claim cannot pass through this screen.

There is no credible evidence in the record to suggest that the appellant was less culpable than the mine-run of felons involved in similar crimes.  To the contrary, he admitted during the change-of-plea colloquy that he conspired with Correa to buy five kilograms of cocaine; that he intended to distribute the cocaine after it was acquired; and that he and Correa went together to the scene of the planned transaction.  His self-serving statement that he was only to receive $300 for his efforts is not

supported by anything in the record and conflicts with his admissions at the change-of-plea hearing. Given this mise-en-scène, the appellant's status argument is not the "only one rationally supported by the record below." Id. Hence, the sentencing court's failure, sua sponte, to grant the appellant a role-in-the-offense reduction was not plainly erroneous.

In an effort to avoid the rigors of "plain error" review, the appellant points out that the time parameters applicable to objections are not inflexible. The sentencing court "[f]or good cause shown . . . may allow a new objection to be raised at any time before imposing sentence." Fed. R. Crim. P. 32(b)(6)(D).[6] But this escape hatch is not available to the appellant. A claim of "writer's block" hardly constitutes good cause. See generally Pontarelli v. Stone, 930 F.2d 104, 110-11 (1st Cir. 1991) (distinguishing "good cause" from "excusable neglect" in an analogous context).

This leaves the appellant's ineffective assistance of counsel claim. In it, he surmises that, but for his trial attorney's inept performance, he would have received both a role-

---

[6]The appellant argues that, in this case, the sentencing court must have found good cause because it addressed the merits of the objection. This is whistling past the graveyard. The court, in what appears to have been an effort to assuage the lawyer's concern over not having raised the point in a timely fashion, merely noted the obvious weakness of the "minor participant" argument. To read the court's comments as the functional equivalent of a finding of good cause elevates hope over reason.

in-the-offense reduction under USSG §3B1.2 and a full three-level discount for acceptance of responsibility under USSG §3E1.1(a) and (b)(2), thus ensuring a lighter sentence. In his view, this circumstance warrants vacation of his sentence and a remand for a new sentencing hearing. See Strickland v. Washington, 466 U.S. 668, 694 (1984) (concluding that ineffective assistance of counsel occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

We decline to entertain this plaint. The law is firmly settled in this circuit that, as a general rule, fact-specific claims of ineffective assistance of counsel, not raised below, cannot be aired for the first time on direct appeal. See United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (collecting cases); United States v. Costa, 890 F.2d 480, 482-83 (1st Cir. 1989); United States v. Hoyos-Medina, 878 F.2d 21, 22 (1st Cir. 1989).

Like most rules, this rule admits of certain exceptions. See, e.g., United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991). But those exceptions usually involve situations in which "the critical facts are not genuinely in dispute and the record is sufficiently developed to allow a reasoned consideration of an ineffective assistance claim." Id. Here, however, the record is painfully thin, and further development of the facts is essential

to a reasoned consideration of the appellant's contentions. In similar circumstances, we have declined to entertain ineffective assistance claims on direct appeal. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Nelson-Rodriguez</u>, ___ F.3d, ___, ___ (1st Cir. 2003) [No. 00-1402, slip op. at 64]; <u>United States</u> v. <u>Hunnewell</u>, 891 F.2d 955, 956 (1st Cir. 1989). Adhering to that salutary practice here, we reject the appellant's ineffective assistance of counsel claim, without prejudice to his right, if he so elects, to assert that claim in the district court by means of an application for collateral relief. <u>See</u> 28 U.S.C. § 2255.

**<u>Affirmed</u>**.