In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2392

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

KEITH RAY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02-CR-1064-1—**James F. Holderman**, *Chief Judge*.

ARGUED OCTOBER 30, 2009—DECIDED MARCH 17, 2010

Before CUDAHY, POSNER, and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* On November 4, 2002, while en route from Chicago to Minneapolis, Keith Ray was arrested for possessing almost two kilograms of crack cocaine. Due to his significant cooperation, Ray and the government entered into a plea agreement that provided for 263 months' imprisonment. This was significantly below the relevant Guidelines range of 292-365 months. The agreement did not state that the specified sentence

was based upon the Guidelines; nor did it elucidate how the parties arrived at the 263-month figure. After he was sentenced to the agreed term, the Sentencing Commission issued Amendment 706, which lowered the offense level for crack-cocaine offenses. Had this amendment been in effect during his prosecution, Ray's Guidelines range would have been 235 to 293 months. Contending that the 263-month term in the plea agreement represented a 10% reduction from the low end of the relevant Guidelines range (292 months), Ray filed a 18 U.S.C. § 3582(c) motion for a lower sentence. The district court denied the motion on the ground that the sentence he received was based on the stipulated term of imprisonment rather than on the Guidelines. We affirm.

## I. BACKGROUND

Beginning in early September 2002, Keith Ray began a series of trips between Minneapolis and Chicago for the purpose of acquiring crack cocaine and bringing it to Minnesota for distribution. This improvident course of action reached its inevitable conclusion on November 4, 2004, when Ray and Dorian Bowlds acquired some 1,955 grams of crack cocaine in Chicago and boarded a train to Minneapolis. While en route, Ray was approached by law enforcement agents. Despite a futile effort on Ray's part to hide the cocaine by passing it to Bowlds, the agents discovered the drugs and arrested the pair.

On January 16, 2003, Ray pleaded guilty to conspiracy to possess with intent to distribute in excess of 50 grams' crack cocaine. Due to Ray's substantial assistance to the

prosecution, he and the government entered into a plea agreement that provided for a sentence of 263 months' imprisonment. This represented a marked reduction from the relevant Guidelines range, which in light of his criminal history and other pertinent factors was 292-365 months. Although the agreement did not explain the basis upon which the 263-month figure was determined, it is 10% less than the low end of the then-existing Guidelines range. The district court accepted the plea agreement and imposed the agreed-upon sentence.

On November 1, 2007, the Sentencing Commission issued Amendment 706 to U.S.S.G. § 2d1.1, which reduced the base-offense level for crack-cocaine offenses by two levels. Ray brought a motion under 18 U.S.C. § 3582(c)(2), requesting that the district court reduce his sentence to 212 months' imprisonment, which represented a 10% reduction from the low end of his amended Guideline range of 235 to 293 months.

The district court denied Ray's motion, finding that his term of imprisonment was not based on a sentencing range that had subsequently been lowered by the Sentencing Commission. Rather, the court determined that Ray's prison term was based on an agreed sentence under what is now Fed. R. Crim. P. 11(c)(1)(C). Ray now appeals this decision.

## II. DISCUSSION

The issue before us is a relatively straightforward one. Section 3582(c)(2) provides that with respect to "a defen-

dant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o) . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In the present case, there is no question that the Commission lowered the sentencing range for crack-cocaine offenses. The only issue presented for our determination is whether Ray was sentenced "based on" the Sentencing Guidelines. If so, he is entitled to file a § 3582(c)(2) motion and to petition the district court for a reduced sentence.

Ray's plea agreement provided that the government would move the court "to depart from the applicable sentencing guidelines range . . . and to impose the specific sentence agreed to by the parties." The agreement further specified that "the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 263 months." On this basis, the appellant invites us to hold that his 263-month sentence was based on the Guidelines range of 292-365 months, rather than specifically on his agreement with the government. We decline to do so.

Ray's argument centers, as it must, on the uncontroversial contention that the Sentencing Guidelines played a role in the process by which he and the government arrived at the figure of 263 months. To be sure, it seems

most unlikely that the agreed sentence was arrived upon by chance and without regard to the Guidelines, which presumably featured prominently in the parties' negotiations. At oral argument, counsel for the government conceded that such negotiations typically begin based on the relevant Guidelines range. But it is a far cry from the unremarkable observation that the Guidelines influenced the negotiations that ultimately resulted in the agreed term of 263 months to the more dubious contention that that sentence was "based on" the Guidelines. One must examine the intent of the plea agreement, which, of course, is the ultimate basis of the sentence. Does the plea agreement *clearly* reflect an intent to tie the sentence to the Guidelines so that, if the Guidelines are subsequently adjusted, the sentence should be similarly adjusted? If so, the sentence may be said to be "based on" the Guidelines. Here, however, there is no indication of such an intent.

Ray urges us to recognize that the 263-month figure is not a random result, but rather represents 90% of the low end of the relevant Guidelines range. This might well be true. It is entirely plausible that the parties viewed a 10% reduction from the low end of the Guidelines range as the appropriate sentence in the present case. But since the parties failed to specify this relationship in writing, we can only surmise its existence. *Accord United States v. Sanchez*, 562 F.3d 275, 282 (3d Cir. 2009). Such speculation provides insufficient basis for us to conclude that the 263-month sentence was "based on" the Guidelines.

Moreover, even if we were completely confident that the 263-month result was derived in this manner, it does not follow that the parties would have agreed to a 10% reduction on the low end of the new Guidelines range, had it been in effect at the time of Ray's prosecution. The government may view a 10% reduction from 292 months (the low end of the old range) to the agreed-upon 263 months to be acceptable, and yet not deem the same percentage reduction from 235 months (the low end of the new range) to 212 months to be appropriate. How are we to presume that the government would define a reasonable reduction in such a linear manner? Ultimately, the written agreement does not state that the parties intended for the appropriate sentence to be 10% below the low end of the relevant Guidelines range. And it is the intent of the parties at the time of the plea agreement, as memorialized in it, which is determinative.

Our conclusion that Ray's sentence was "based on" his plea agreement, rather than the Guidelines, is bolstered by numerous decisions of our sister circuits. *See United States v. Main*, 579 F.3d 200, 203 (2d Cir. 2009) (holding that where a district court departs from the Guidelines by imposing a below-Guidelines sentence, a defendant cannot be said to have been sentenced "based on" those Guidelines); *United States v. Sanchez*, 562 F.3d 275, 282 (3d Cir. 2009); *United States v. Peveler*, 359 F.3d 369, 379 (6th Cir. 2004); *United States v. Scurlack*, 560 F.3d 839, 842 (8th Cir. 2009) ("Under Rule 11(c)(1)(C), the court therefore was bound to sentence [defendant]

pursuant to the terms of the parties' agreement, and § 3582(c)(2) became inapplicable because [defendant's] sentence was based on the agreement and not 'a sentencing range that ha[d] subsequently been lowered by the Sentencing Commission' "); *United States v. Trujeque*, 100 F.3d 869, 871 (10th Cir. 1996) (same); *see also United States v. Cook*, ___ F.3d ___, 2010 WL 481270, at *2 (D.C. Cir. Feb. 12, 2010); *United States v. Cieslowski*, 410 F.3d 353, 363-64 (7th Cir. 2005); *United States v. Hemminger*, 114 F.3d 1192, 1997 WL 235838, at *1 (7th Cir. May 2, 1997).

Confronted with this unpropitious precedent, Ray focuses our attention on a recent decision of the Tenth Circuit. In *United States v. Cobb*, that court held that a defendant who had entered into a Rule 11(c)(1)(C) agreement could bring a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). 584 F.3d 979, 981 (10th Cir. 2009). There, the parties had stipulated to a sentence at the low end of the Guidelines. *Id.* at 982. Reasoning that "[i]t is simply unrealistic to think that the applicable guideline range is not a major factor (if not *the* major factor) in reaching a stipulated sentence," the court concluded that "nothing in the language of § 3582(c)(2) or in the language of Rule 11 precludes a defendant who pleads guilty under Rule 11 from later benefitting from a favorable retroactive guideline amendment." *Id.* at 984-85 (emphasis original).

Despite this ostensibly favorable ruling, *Cobb* does not benefit the appellant in the present case. As the Tenth Circuit made clear in distinguishing prior case law, the appellant in *Cobb* had stipulated to a sentence tied to a

correctly determined Guidelines range rather than to a sentence outside the sentencing range. *Id.* at 983. Ray obviously entered into an agreement with the government to a below-Guidelines term of imprisonment. Moreover, in *Cobb*, the appellant's "sentencing disposition was tied to the guidelines at every step." *Id.* at 983. The Tenth Circuit case may arguably be said to have found that the *intent* of the plea agreement was to tie the sentence to the Guidelines range, which was moved. Such is clearly not the case with respect to Ray, whose plea agreement draws no connection between the agreed-to sentence and the relevant Guidelines range.

Only if an intent to modify is apparent at the time of the agreement is the sentence modifiable since the issue is one of contract principle. Our case law makes clear that the sentence imposed under a plea bargain rests firmly on the parties' agreement. *See United States v. Woods*, 581 F.3d 531, 534 (7th Cir. 2009) (observing that a "plea agreement is a type of contract subject to contract law principles" and that "[w]e interpret the terms of the agreement according to the parties' reasonable expectations"); *United States v. Monroe*, 580 F.3d 552, 556 (7th Cir. 2009) ("As a general matter, we interpret plea agreements in accordance with ordinary principles of contract law."); *United States v. Ataya*, 864 F.2d 1324, 1329 (7th Cir. 1998) ("This Court has long recognized that a plea agreement is a contract."). Since plea agreements under Fed. R. Crim. P. 11(e)(1)(C) are creatures of contract, there is no reason why such agreements could not

provide for the modifiability of the Guidelines.[1] Ray's plea agreement, however, contained no such provision and evidenced no clear intent that his sentence be adjusted in tandem with any future adjustment in the Guidelines. This being the case, we cannot conclude that his 263-month sentence was "based on" the Guidelines.

### III. CONCLUSION

In the absence of explicit language in the agreement to the contrary, a sentence imposed pursuant to a Fed. R. Crim. P. 11(c)(1)(C) plea agreement cannot be said to be "based on" the Sentencing Guidelines. An agreement must clearly reflect an intent that the sentence be modified when the Guidelines shift. Ray's plea agreement did not reflect such an intent. That being so, the district court was correct to conclude that Ray's 263-month sentence was not based on the Guidelines

---

[1] Just as a defendant can bargain away his right to seek a reduced sentence under 18 U.S.C. § 3582(c), so surely a defendant may bargain for his sentence to move in tandem with any future favorable amendment in the Guidelines. *Compare Hemminger*, 1997 WL 235838, at *1 (observing that a defendant bargained away his right to receive a lower sentence) *with Cobb*, 584 F.3d at 979 (allowing a defendant to bring a motion under 18 U.S.C. § 3582(c) where the plea agreement explicitly tied the agreed sentence to the Guidelines, which evidenced an intent that the agreed sentence would change in line with any subsequent alteration in the Guidelines).

and that, as a result, he could not bring a 18 U.S.C. § 3582(c)(2) motion. The judgment of the district court is therefore

AFFIRMED.