# United States Court of Appeals
## For the First Circuit

No. 09-1766

UNITED STATES OF AMERICA,

Appellee,

v.

ROBIN EDDIE RIVERA-MARTÍNEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Selya and Howard, Circuit Judges.

Jean C. LaRocque, by appointment of the court, for appellant.
Vijay Shanker, Attorney, Appellate Section, Criminal Division,
United States Department of Justice, with whom Rosa Emilia
Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa,
Assistant United States Attorney (Appellate Chief), and Julia M.
Meconiates, Assistant United States Attorney, were on brief, for
appellee.

June 9, 2010

**SELYA**, **Circuit Judge**.  This appeal raises an issue, new to this court, that has fomented a circuit split: Is a defendant who was sentenced pursuant to a binding C-type plea agreement, Fed. R. Crim. P. 11(c)(1)(C), for conspiring to distribute crack cocaine entitled to a sentence reduction by reason of retroactive amendments to the sentencing guidelines designed to lower sentences for crack cocaine offenses?  We conclude that, in the absence of explicit countervailing language in the plea agreement, 18 U.S.C. § 3582(c)(2) does not apply and, therefore, such a defendant is ineligible for the sentence reduction.

## I. BACKGROUND

On March 6, 2000, defendant-appellant Robin Eddie Rivera-Martínez pleaded guilty to a charge of conspiring to possess with intent to distribute, inter alia, more than five kilograms of cocaine base (crack cocaine).  See 21 U.S.C. §§ 841(a)(1), 846. The defendant entered his plea after having made an agreement with the government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).[1]  That rule allows the parties to agree to a specific disposition, which will bind the district court if, as, and when

---

[1] More precisely, the plea agreement was made pursuant to former Rule 11(e)(1)(C), which was revised and renumbered in 2002. It is now Rule 11(c)(1)(C).  The revisions are wholly stylistic. See Fed. R. Crim. P. 11 advisory committee's note (2002 amendments); see also United States v. Main, 579 F.3d 200, 203 n.2 (2d Cir. 2009); United States v. Scurlark, 560 F.3d 839, 841 n.3 (8th Cir. 2009).  For ease in exposition, we use the new number throughout.

-2-

the court accepts the agreement. A plea of this kind is commonly termed a "C-type" plea, and we will employ that nomenclature.

The defendant's plea agreement spells out the parties' agreement that the defendant will receive a 240-month sentence. Although the pact contains no forecast of a guideline sentencing range (GSR), paragraph seven includes a stipulation to a total offense level (thirty-seven) and a covenant against further adjustments to that level.

At the change-of-plea hearing, the district court provisionally accepted the proffered plea and ordered the preparation of a presentence investigation report (PSI Report). When delivered, the PSI Report suggested a GSR, the calculation of which was premised upon the stipulated total offense level and a criminal history category of II.

The district court convened the disposition hearing on September 12, 2000. After rehearsing the PSI Report's guideline calculations (which yielded a GSR of 235-293 months), the court stated that it would "accept the [C-type] plea agreement stipulated by the parties and . . . sentence the Defendant accordingly." It then imposed the agreed-upon sentence: 240 months in prison.

We fast-forward to 2007, when the United States Sentencing Commission announced an across-the-board reduction of base offense levels for crack cocaine offenses. See USSG App. C, Amend. 706 (Supp. 2007) (modifying USSG §2D1.1); see also USSG App.

-3-

C, Amend. 711 (Supp. 2007). These amendments, originally effective November 1, 2007, were later made retroactive. See USSG App. C, Amend. 713 (Supp. 2008). Their purpose was to ameliorate the sentencing disparity between offenses involving powdered cocaine and offenses involving crack cocaine. See United States v. Caraballo, 552 F.3d 6, 8 (1st Cir. 2008).

Seizing upon these developments, the defendant moved for a sentence reduction. See 18 U.S.C. § 3582(c)(2). The district court denied the motion. United States v. Rivera-Martínez, No. 99-255-003 (D.P.R. Apr. 7, 2009) (unpublished order). The court reasoned that because the defendant was "sentenced under a binding plea agreement, which contemplated a stipulation on the . . . term of confinement to be imposed . . . , a further reduction of imprisonment pursuant to Amendments #706 and 711 . . . is not considered applicable." Id. This timely appeal ensued.

## II. ANALYSIS

We normally review a district court's denial of a motion for sentence reduction for abuse of discretion. See, e.g., United States v. Rodríguez-Peña, 470 F.3d 431, 432 (1st Cir. 2006) (per curiam). Here, however, the threshold question is whether the district court had authority to revise the sentence. That is a question of law, which engenders de novo review. Caraballo, 552 F.3d at 9.

-4-

For the most part, once a pronounced sentence in a criminal case becomes final and unappealable, the sentencing court may not revise it. 18 U.S.C. § 3582(c). Like virtually every general rule, however, this rule is subject to exceptions. One such exception provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Id. § 3582(c)(2). This subsection authorizes a district court to reduce a sentence if — and only if — the Sentencing Commission subsequently amends a guideline on which the sentence was based. Caraballo, 552 F.3d at 9.

In this instance, the defendant pleaded guilty by means of a C-type plea agreement. The applicable rule permits the parties to agree that, upon the entry of a plea of guilty or nolo contendere, the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(C). Where the parties employ this device (as they did in this case), the resultant "recommendation or request binds the court once the court accepts the plea agreement." Id. This

sets up a unique dynamic: although garden-variety plea agreements generally are treated as binding on the defendant and the government, see United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001), only C-type plea agreements bind the sentencing court as well. See United States v. Scurlark, 560 F.3d 839, 842 (8th Cir. 2009).

The salient question in this case reduces to whether a district court has authority, under section 3582(c)(2), to modify a sentence imposed pursuant to a C-type plea agreement when that agreement was negotiated against the backdrop of guidelines that were subsequently amended. Although this question is one of novel impression in this circuit, other courts of appeals have grappled with it. The majority of them have held, albeit with varying rationales, that the district court lacks such authority under section 3582(c)(2). See, e.g., United States v. Green, 595 F.3d 432, 436 (2d Cir. 2010); United States v. Sanchez, 562 F.3d 275, 279 (3d Cir. 2009); Scurlark, 560 F.3d at 842; United States v. Peveler, 359 F.3d 369, 378-79 (6th Cir. 2004). Other courts have strayed from this categorical approach in favor of a case-by-case appraisal aimed at determining whether a particular sentence, when rendered, could fairly be said to have been based on the guidelines. See, e.g., United States v. Garcia, ___ F.3d ___, ___ [2010 WL 1816619, at *3] (5th Cir. 2010) (per curiam); United States v. Franklin, ___ F.3d ___, ___ [2010 WL 1427536, at *3] (7th Cir. 2010). One court

of appeals, reading the language of section 3582(c)(2) broadly, has held that a district court has authority to reduce a sentence imposed pursuant to a C-type plea agreement.[2]  See United States v. Cobb, 584 F.3d 979, 985 (10th Cir. 2009).

We begin our analysis with the elementary proposition that a court, within wide limits, should interpret a plea agreement according to principles of contract law.  United States v. Ortiz-Santiago, 211 F.3d 146, 151 (1st Cir. 2000); cf. Teeter, 257 F.3d at 28 (recognizing certain limits to this analogy).  Once a defendant knowingly and voluntarily enters into a plea agreement, both the defendant and the government become bound by its terms.  Ortiz-Santiago, 211 F.3d at 151.  If the pact is a C-type plea agreement and the district court accepts it, the court too is bound by its terms.  See Fed. R. Crim. P. 11(c)(1)(C).  While a district court is free to accept or reject a C-type plea agreement, see Fed. R. Crim. P. 11(c)(3)(A), it may not, after acceptance, disregard the terms of such an agreement.  See Green, 595 F.3d at 438; Scurlark, 560 F.3d at 842; Peveler, 359 F.3d at 377.

The defendant's claim that the guideline amendments bring him within the compass of section 3582(c)(2) and entitle him to a

---

[2] A panel of the Fourth Circuit held similarly, but the court granted rehearing en banc, simultaneously vacating the panel opinion.  See United States v. Dews, 551 F.3d 204 (4th Cir. 2008), reh'g en banc granted, No. 08-6458 (4th Cir. Feb. 20, 2009).  The en banc court later dismissed the appeal as moot, and the panel opinion is no longer good law.  See United States v. Cook, 594 F.3d 883, 888 n.3 (D.C. Cir. 2010).

sentence reduction is undermined by the way in which C-type plea agreements operate. Once the district court accepts a C-type plea agreement, the court is obliged to sentence the defendant in strict conformity with the terms of the agreement. The sentence is, therefore, "based on" the plea agreement. See Green, 595 F.3d at 440-41; Sanchez, 562 F.3d at 282 & n.8; Scurlark, 560 F.3d at 842. That is antithetic to the requirements of section 3582(c)(2), under which a district court lacks authority to modify a sentence unless that sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."

This does not mean that there is no connection between C-type plea agreements and the sentencing guidelines. It is common practice that, in determining whether to accept or reject the sentence proposed in a C-type plea agreement, a district court will use the guidelines as a point of comparison. But taking such a precautionary step does not transmogrify an agreement-based sentence into one based on the guidelines.[3] See United States v. Cieslowski,

---

[3] To some extent, this conclusion was adumbrated by our earlier decision in Caraballo. There, we wrote that "if an amended guideline does not have the effect of lowering the sentencing range actually used at sentencing, the defendant's sentence was not based on that range within the intendment of [section 3582(c)(2)]." 552 F.3d at 10; see also United States v. Cardosa, ___ F.3d ___, ___ [2010 WL 2136664, at *4] (1st Cir. 2010) (holding that "where the defendant's existing sentence was ultimately determined by the old crack cocaine guidelines . . . resentencing is within the discretion of the district court") (emphasis in original). Even though these statements were not made in cases involving C-type plea agreements, they are in harmony with our holding today. After all, when a defendant enters into a C-type plea agreement, the

-8-

410 F.3d 353, 364 (7th Cir. 2005) ("A sentence imposed under a [C-type] plea arises directly from the agreement itself, not from the Guidelines, even though the court can and should consult the Guidelines in deciding whether to accept the plea.").

The fact that the guidelines may have played a role in the parties' negotiation of a particular sentence does not alter this analysis. When a C-type plea is at issue, it is the terms of the agreement, not the process of arriving at those terms or the external considerations bearing upon them, that dictate the sentence to be imposed. See United States v. Ray, 598 F.3d 407, 409 (7th Cir. 2010); United States v. Bride, 581 F.3d 888, 891 (9th Cir. 2009); see also Ortiz-Santiago, 211 F.3d at 151 (explaining that the court should not look beyond the four corners of a plea agreement in construing its terms). Absent an express statement in the plea agreement making the sentence dependent upon a guideline calculation, a sentence imposed pursuant to a C-type plea agreement is based on the agreement itself, not on the guidelines. See Green, 595 F.3d at 440-41; Sanchez, 562 F.3d at 282 & n.8; Scurlark, 560 F.3d at 842.

In the case at hand, the terms of the plea agreement do not expressly provide (or even hint) that the stipulated 240-month

---

court does not sentence the defendant according to a guideline calculation but, rather, according to the sentence stipulated in the plea agreement. Thus, there is no "sentencing range actually used at sentencing." Caraballo, 552 F.3d at 10.

sentence depends on the guidelines.  The fact that the agreement includes a stipulation as to the defendant's total offense level does not suffice.  Merely mentioning one integer in a possible guidelines calculation is not enough to evince a mutual intention that the agreed-upon sentence will be adjusted should the relevant guidelines change.[4]

We add a coda.  Even apart from the plain meaning of "based on" in section 3582(c)(2), Rule 11(c)(1)(C) itself precludes a district court from unilaterally altering a sentence lawfully imposed under a C-type plea agreement.  Once the court accepts such a plea agreement, it is bound by the terms thereof.  See United States v. Mukai, 26 F.3d 953, 955 (9th Cir. 1994) (noting that "[t]he rules contain no provision for the district court to modify a [C-type] plea agreement").  Consequently, the court cannot vary the agreed-upon sentence unless the terms of the plea agreement explicitly authorize it to do so.  See Peveler, 359 F.3d at 378-79.  In the absence of such a provision, the court is bound to impose (and leave undisturbed) the agreed-upon sentence.  See Sanchez, 562 F.3d at 281 n.7; id. at 282-83 (Rendell, J., concurring); Peveler, 359 F.3d at 378-79.

---

[4] Indeed, the instant plea agreement does not even contain the ingredients from which a GSR could be calculated.  It is not only silent as to the defendant's criminal history category but also states explicitly that the parties have not reached a consensus on that subject.  Thus, it is impossible, within the four corners of the plea agreement, even to calculate the GSR.

This result is consistent with the established view that plea agreements are for the most part governed by principles of contract law. In this case, no principle of contract law would have justified the lower court, once it accepted the agreement, in revising the specified sentence.

In an effort to contradict this conclusion, the defendant asserts that this is a case that involves a mutual mistake of fact; that is, a mutual mistake about a fundamental assumption — the immutability of the guidelines that formed the backdrop against which the parties negotiated the agreed-upon sentence. The doctrine of mutual mistake is recognized in the law of contracts, see 27 Samuel Williston, Williston on Contracts § 70:74 (4th ed. 2003), but the attempt to weave it into the fabric of this case is an exercise in futility.

Whether a party to a plea agreement may be entitled to relief on the ground of mutual mistake is in dispute. Compare, e.g., United States v. Olesen, 920 F.2d 538, 542 (8th Cir. 1990) (holding that principle of mutual mistake does not apply to permit modification of plea agreement), with, e.g., United States v. Bradley, 381 F.3d 641, 648 (7th Cir. 2004) (holding that mutual mistake as to essential element of plea agreement can invalidate entire agreement). This court has indicated that, in rare instances, mutual mistake might afford a valid ground for relief from a plea agreement. See Teeter, 257 F.3d at 28 n.12 (dictum).

-11-

We need not resolve this question definitively because there is no evidence here of a mutual mistake. In other words, there is nothing that suffices to show an assumption, held by both the defendant and the prosecution, that the relevant guidelines would not be amended in the future. The raw materials needed to apply the doctrine of mutual mistake are, therefore, lacking. See Sanchez, 562 F.3d at 281 n.7; Peveler, 359 F.3d at 378 n.4.

## III.   CONCLUSION

We need go no further. The plea agreement at issue here reflects the parties' agreement to a specific sentence, and the district court, once it accepted that C-type agreement, was duty bound to adhere to that sentence. It follows inexorably that the imposed sentence is based on the plea agreement itself, not on "a sentencing range that has subsequently been lowered." 18 U.S.C. § 3582(c)(2). The upshot is that, notwithstanding the guideline amendments lowering the offense levels for crack cocaine offenses, section 3582(c)(2) does not authorize a reduction of the defendant's sentence.

**Affirmed**.

-12-