UNITED STATES of America,

v.

Anthony GRAHAM, Defendant.

No. 09–cr–30031–MAP.

United States District Court,
D. Massachusetts.

June 22, 2012.

Michelle L. Dineen Jerrett, United States Attorney's Office, Springfield, MA, for United States of America.

Perman Glenn, III, Law Office of Perman Glenn, III, Springfield, MA, for Anthony Graham.

### MEMORANDUM AND ORDER REGARDING MOTIONS FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) (Dkt. Nos. 87 & 95)

PONSOR, District Judge.

## I. INTRODUCTION

Defendant Anthony Graham was charged with conspiracy to possess with intent to distribute and to distribute cocaine base, as well as substantive possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On February 16, 2010, he pled guilty to both counts pursuant to a Fed.R.Crim.P. 11(c)(1)(C), or "type C," plea agreement, under which he and the government agreed to a 90–month sentence. On June 11, 2010, this court sentenced Defendant to 90 months of imprisonment.

On November 17, 2011, Defendant filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of recent amendments to the federal sentencing guidelines. (Dkt. No. 87.) The court thereafter appointed counsel for Defendant, who filed a supplemental motion for a sentence reduction on February 3, 2012. (Dkt. No. 95.) For the reasons stated below, the court will allow Defendant's motions and enter an amended judgment sentencing Defendant to 60 months custody of the Bureau of Prisons.

## II. BACKGROUND

Defendant's sentencing range under the guidelines in effect at the time of his sentencing was 46 to 57 months, without consideration of statutory minimums. However, Defendant's offenses carried a mandatory minimum sentence of 60 months. Following the return of the indictment, the government filed an Information pursuant to 21 U.S.C. § 851, which doubled the mandatory minimum to 120 months.

Under the plea agreement, the government agreed to withdraw the § 851 Information, and therefore remove the 120–month mandatory minimum, in exchange for a sentence of 90 months. The plea agreement calculated the guidelines range of 46 to 57 months and noted that, because a 60–month mandatory minimum applied, the advisory guidelines sentence became 60 months. See U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). The plea agreement acknowledged that Defendant originally faced a 120–month mandatory minimum sentence and that the government would withdraw the § 851 Information as part of the agreement to lower the mandatory minimum term to 60 months. The agreement did not explicitly state how the parties arrived at the agreed 90–month term of imprisonment, but the process appeared transparently Solomonic: the parties halved the difference between the 60–month guidelines term and the 120–month term that would have been mandatory if the government had not withdrawn the § 851 Information.

Less than two months after Defendant was sentenced, Congress passed the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111–220, 124 Stat. 2372, which raised the amount of crack cocaine necessary to trigger mandatory minimums and called for the revision of the sentencing guidelines on crack cocaine offenses. In response to the FSA, the U.S. Sentencing Commission passed an amendment to the guidelines lowering the recommended penalties for crack cocaine offenses. Under the guidelines in effect under the FSA, Defendant would have been subject to a guidelines sentencing range of 30 to 37 months and no mandatory minimum term. In light of this amendment, Defendant requests that the court reduce his sentence from 90 to 60 months.[1]

## III. DISCUSSION

### A. Eligibility for § 3582(c)(2) Relief.

■ Under 18 U.S.C. § 3582(c)(2), a court may reduce the sentence imposed on a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission...." 18 U.S.C. § 3582(c)(2). Defendant argues that his sentence was "based on" the crack cocaine guidelines range that was lowered by an amendment to the guidelines and, thus, he is eligible for § 3582(c)(2) relief. Under ordinary circumstances, Defendant would have a strong argument, since the 60–month guidelines sentence, which anchored one end of the equation that led to his 90–month sentence, was reduced to 30 to 37 months.

However, the government contends that § 3582(c)(2) does not apply because Defen-

---

1. Because the FSA does not apply retroactively to defendants sentenced prior to its passage, see United States v. Goncalves, 642 F.3d 245, 254–55 (1st Cir.2011), Defendant acknowledges that the 60–month statutory mandatory minimum that was in effect at the time of his sentencing still applies.

dant's sentence was based on a type C plea agreement, not on the sentencing guidelines, and the agreed-upon sentence was not "based on" the now-amended crack cocaine guidelines. Under a type C plea agreement, parties "agree that a specific sentence or sentencing range is the appropriate disposition of the case, ... [and that recommendation] binds the court once the court accepts the plea agreement." Fed. R.Crim.P. 11(c)(1)(C).

Overturning previous decisions in the Courts of Appeals, the Supreme Court in *Freeman v. United States*, — U.S. —, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011), held that a defendant sentenced pursuant to a type C plea agreement may be eligible for § 3582(c)(2) relief under certain circumstances. The holding in *Freeman* was somewhat nuanced, since the majority was divided between a four-justice plurality and a separate concurring opinion.

The plurality concluded that a sentence imposed pursuant to a type C plea agreement will inevitably be "based on" the guidelines because a sentencing court must consider the guidelines and calculate the relevant guidelines range when deciding whether to accept the plea agreement. *Id.* at 2695 (plurality opinion). In her concurring opinion, Justice Sotomayor adopted a somewhat narrower view. According to Justice Sotomayor, a sentence imposed under a type C agreement is based on the agreement itself, not on the guidelines. *Id.* (Sotomayor, J., concurring). In her opinion, the fact that a district court calculated the relevant guidelines range when deciding whether to accept the agreement was irrelevant. *Id.* at 2696. Justice Sotomayor concluded that a defendant who entered into a type C agreement would, however, be fully eligible for § 3582(c)(2) relief "when a (C) agreement expressly uses a Guidelines sentencing range to es-

tablish the term of imprisonment." *Id.* at 2698.

■ When there is no majority agreement on the rationale explaining a Supreme Court decision, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal citation omitted). Applying this principle, the First Circuit has determined that Justice Sotomayor's concurring opinion defines the holding in *Freeman*. *United States v. Rivera–Martinez*, 665 F.3d 344, 348 (1st Cir.2011). Consequently, although Defendant would clearly be eligible for § 3582(c)(2) relief under the *Freeman* plurality's analysis, the proper application of the narrower rule set forth by Justice Sotomayor in her concurrence requires a bit more work.

Justice Sotomayor explained that there are two broad scenarios in which a plea agreement "expressly uses a Guidelines sentencing range to establish the term of imprisonment." *Freeman*, 131 S.Ct. at 2698 (Sotomayor, J., concurring). The first scenario, in which the parties agree to a specific guidelines sentencing range, does not apply in this case. In the second scenario, an agreement that provides for a specific term of imprisonment instead of a sentencing range is still based on the guidelines if it "makes clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty." *Id.* at 2697–98.

The key term in the quoted passage is "basis." When analyzing whether an agreement makes clear that it was *based* on a guidelines range, the court is limited to the terms of the agreement itself. The fact that the judge merely considered the guidelines in deciding whether to accept

the type C agreement, or that the parties to the agreement themselves took into consideration the guidelines in negotiating the terms, as noted, is irrelevant. *Id.* at 2695–97; *see also Rivera–Martinez,* 665 F.3d at 349 ("[I]t is the terms contained within the four corners of the plea agreement that matter.").

This makes sense. Mere consideration of the guidelines can hardly be sufficient to render them the "basis" for a sentence. The question then becomes: how strong a role must the guidelines play in a type C agreement to permit a court to conclude that the agreement was "based" on the guidelines? A review of the agreements in *Freeman* and *Rivera–Martinez* provides helpful guidance in conducting this analysis.

The plea agreement in *Freeman* stated that the defendant "agrees to have his sentence determined pursuant to the Sentencing Guidelines," then calculated the defendant's offense level and anticipated criminal history category, established that one of the charges carried a 60–month mandatory minimum to be served consecutively to any terms of imprisonment imposed on the other charges, and recommended a term of imprisonment of 106 months. *Freeman,* 131 S.Ct. at 2691 (plurality opinion). The agreement did not explain how the parties arrived at the 106–month recommendation and acknowledged that there was some uncertainty about the guidelines calculations. In fact, the agreement gave both parties the right to object to the pre-sentence report's calculation of the defendant's criminal history category and noted that the guidelines calculations within the agreement were not binding on the sentencing court. *Id.* at 2703 (Roberts, C.J., dissenting).

Because the agreement contained the defendant's offense level and criminal history category, Justice Sotomayor was, on her own, easily able to calculate that the defendant's guidelines sentencing range was 46 to 57 months. *Id.* at 2699 (Sotomayor, J., concurring). Based on this, Justice Sotomayor concluded that it was evident that the term of imprisonment in the agreement was negotiated by adding the low end of the guidelines range of 46 months to the consecutive mandatory minimum of 60 months. Significantly, she reached this conclusion without an explicit statement in the agreement itself to that effect. *Id.* at 2700. By this process she concluded that the agreement was "based on" the guidelines range and the defendant was eligible for § 3582(c)(2) relief. *Id.*

In *Rivera–Martinez,* the plea agreement recommended a term of imprisonment of 240 months, but did not even attempt to specify the defendant's criminal history category. 665 F.3d at 345–46. The First Circuit concluded that, unlike in *Freeman* where Justice Sotomayor "could identify with certainty a particular sentencing range" with the coordinates identified in the plea agreement, "[the] silence about a criminal history category makes it impossible to conclude from the Agreement alone that the proposed sentence is based on a specific sentencing range." *Id.* at 349. Consequently, the First Circuit held that the agreement was not "based on" the sentencing guidelines and the defendant was ineligible for § 3582(c)(2) relief. *Id.* at 349–50.

The plea agreement in this case falls somewhere between the two relatively clear-cut cases in *Freeman* and *Rivera–Martinez,* but far closer to *Freeman.* As in *Freeman,* and unlike in *Rivera–Martinez,* the agreement here calculated all of the essential guidelines coordinates, stating that Defendant's base offense level was 24, that he should receive credit for acceptance of responsibility, and that he was in Criminal History Category III. (Dkt. No.

41, Plea Agreement, ¶ 4.) The agreement even went a step further than the one in *Freeman* and explicitly calculated Defendant's sentencing range as 46 to 57 months. (*Id.*) The agreement acknowledged that, under U.S.S.G. § 5G1.1(b), Defendant's recommended guidelines sentence became 60 months because of the mandatory minimum term that applied to his offenses at that time. (*Id.*) The agreement further acknowledged that, as part of the agreement, the government would withdraw the § 851 Information, which would have increased the mandatory minimum and the guidelines sentence to 120 months. (*Id.* ¶ 4 n. 1.) The agreement in this case, thus, relied far more on the sentencing guidelines than the agreement in *Rivera–Martinez*, which did not even calculate the defendant's criminal history category. It even went beyond the agreement in *Freeman* because, as noted, it left no work for the court to calculate the applicable guidelines range.

It is true that, unlike in *Freeman*, the agreement here did not contain an explicit agreement by Defendant "to have his sentence determined pursuant to the Sentencing Guidelines." *Freeman*, 131 S.Ct. at 2691 (plurality opinion). This difference has little significance, however, since the method of calculating the agreed term is readily inferable and, as will be seen below, was anchored on the advisory guidelines sentence.

A second difference between this case and *Freeman* has, potentially, more significance. While neither the agreement here nor the one in *Freeman* contained any explicit explanation of the recommended term of imprisonment, the term of imprisonment imposed in *Freeman* did appear to fall at the low end of the putative advisory guidelines range. In this case, the agreed 90–month term of imprisonment fell halfway between the guidelines term, 60

months, and the 120–month term Defendant would have faced absent the government's withdrawal of the § 851 Information. In other words, the agreed sentence was anchored by the guidelines, in the sense that the guidelines were an essential factor in the calculation of the agreed sentence, but it did not actually fall within the guidelines range.

The question before the court, then, is whether, in the government's parlance, a perfect "match" between the agreement's recommended term of imprisonment and the advisory guidelines range is necessary for a type C agreement to be "based on" the guidelines range.

Nothing in Justice Sotomayor's opinion in *Freeman* nor in the First Circuit's decision in *Rivera–Martinez* suggests that this precise overlap is necessary for § 3582(c)(2) eligibility. On the contrary, Justice Sotomayor made clear that the term of imprisonment imposed pursuant to a type C agreement does *not* need to fall within the guidelines range for a defendant to be eligible for § 3582(c)(2) relief. According to Justice Sotomayor, "[t]o ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment." *Id.* at 2695 (Sotomayor, J., concurring). As long as the plea agreement uses a guidelines range "to establish" the term of imprisonment, the agreement is based on the guidelines. *Id.* at 2698; *see also id.* at 2704 (Robert, C.J., dissenting) ("The test in the concurring opinion is whether the agreement 'uses' or 'employs' a Guidelines sentencing range to establish the term of imprisonment, not whether that term falls within the range."). Indeed, Justice Sotomayor explained in *Freeman* that the defendant could have been eligible for § 3582(c)(2) relief *even if* the

agreement called for a sentence outside of the guidelines range:

> If the agreement itself made clear that the parties arrived at the [hypothetical] 53–month term of imprisonment by determining the sentencing range applicable to Freeman's offenses and then halving the 106–month figure at its low end, he would have been eligible under § 3582(c)(2).

*Id.* at 2700 n. 9 (Sotomayor, J., concurring).

Justice Sotomayor's logic is compelling. To say that X is "based" on Y is not to say that X is the same as Y. No "match" is required.

In this case, it is abundantly clear from the four corners of the document that the type C agreement here used the guidelines sentence of 60 months and the potential guidelines sentence of 120 months "to establish" the 90–month recommended term of imprisonment. Starting with the 60–month guidelines sentence as the foundation, the agreement simply split the difference between that foundational term and the term of 120 months that would have applied if the government had declined to withdraw the § 851 Information to calculate the 90–month sentence. Under these circumstances, the agreement and the ultimate sentence were "based on" the guidelines range, and Defendant is eligible for § 3582(c)(2) relief.

### B. *Other Considerations for § 3582(c)(2) Relief.*

Having concluded that Defendant is eligible for a sentence reduction under § 3582(c)(2), the court must determine, first, whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission" and, then, whether a reduction is warranted by the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(2); *see*

*also Dillon v. United States,* —— U.S. ——, 130 S.Ct. 2683, 2691, 177 L.Ed.2d 271 (2010).

The Sentencing Commission's policy statements that are applicable to this case are set forth in U.S.S.G. § 1B1.10. Nothing in that section is inconsistent with a reduction of Defendant's sentence, and the government has not argued to the contrary. The court also finds that, in light of the now widespread recognition that the crack cocaine guidelines under which Defendant was sentenced were flawed and led to unwarranted disparity, reducing Defendant's sentence is fully in line with Congressional intent and is fully warranted by the 18 U.S.C. § 3553(a) factors.

### C. *Waiver.*

■ The government argues that, even if Defendant is otherwise eligible for § 3582(c)(2) relief, he has waived his right to a reduction under that section. The plea agreement included a waiver of Defendant's right to challenge his sentence on appeal or "in a future proceeding in federal court." (Dkt. No. 41, Plea Agreement, ¶ 7(b).) The agreement also stated that "the Court has no authority to modify an agreed-upon sentence under 18 U.S.C. § 3582(c), even if the Sentencing Guidelines are later modified in a way that appears favorable to Defendant." (*Id.*)

■ For a waiver of appeal to be enforceable, the defendant's claim must fall within the waiver's scope and the defendant must have made the waiver "knowingly and voluntarily." *United States v. Ortiz–Garcia,* 665 F.3d 279, 283 (1st Cir. 2011). To determine whether the waiver was knowing and voluntary, the court must confirm that the plea agreement "contains a clear statement elucidating the waiver and delineating its scope." *United States v. Teeter,* 257 F.3d 14, 24 (1st Cir.2001).

Here no waiver can be valid because the agreement misrepresented the state of the law at the time of the sentencing. The plea agreement stated explicitly that "the Court has no authority to modify an agreed-upon sentence under 18 U.S.C. § 3582(c)," and the court must assume that Defendant relied upon that representation. (Dkt. No. 41, Plea Agreement, ¶ 7(b).) Contrary to this statement, however, *Freeman* subsequently made clear that sentencing courts *do* have the authority to modify agreed-upon sentences under § 3582(c)(2). Moreover, the agreement incorrectly instructed Defendant that he *never* had a right to a sentence reduction under § 3582(c)(2), even though at the time of sentencing the issue was, in fact, unresolved and open. Had Defendant known of this right, he almost certainly would have declined to waive it. Indeed, it might well have been improper for the government to insist that he do so. For this reason, Defendant's waiver was clearly neither knowing nor voluntary and, thus, unenforceable.

## IV. *CONCLUSION*

This case typifies the distorted position a sentencing court is placed in during this season of rapid change in the sentencing environment. Prison sentences are supposed to make sense. On some level, they must find their rationale and justification in the defendant's misconduct, not in vagaries of legislative and administrative processes. Yet here, if Defendant had been sentenced two months later, his guidelines term of 30 to 37 months would have been roughly one third of the 90–month sentence he received and roughly half the 60–month sentence he now begs from the court. The painful anomalies that now infect the criminal sentencing process did not drive the court's decision here, but are worth mentioning.

For the reasons set forth above, Defendant's Motions for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (Dkt. Nos. 87 & 95) are hereby ALLOWED. The clerk will enter an appropriate order reducing Defendant's term of confinement to 60 months custody of the Bureau of Prisons. The sentence will remain unchanged in all other respects.

It is So Ordered.